UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.:

YADIEL ISABEL PENA, PPA YACAIRA PENA, AND
YACAIRA PENA,
                              Plaintiff,
V.
JENNIFER BENTWOOD, M.D.,
CATHERINE MYGATT, M.D.,
JACQUELINE PAPACHRISTON, R.N.,
CHERYL BRITT, R.N.,
JENNIFER FARMER, R.N.,
PATRICIA LANE, R.N.,
DAWN BELLORADO, R.N., AND
UNITED STATES OF AMERICA,
                              Defendants.

# *COMPLAINT*

## Parties

1.      Plaintiff, Yadiel Isabel Pena, is a minor who resides in Waltham, Middlesex County, Massachusetts and brings this action through his Mother and next friend, Yacaira Pena.

2.      Plaintiff, Yacaira Pena is an individual who resides in Waltham, Middlesex County, Massachusetts.

3.      Defendant, Jennifer Bentwood, M.D. is a physician licensed to practice in the Commonwealth of Massachusetts.

4.      Defendant, Catherine Mygatt, M.D. is a physician licensed to practice in the Commonwealth of Massachusetts.

5.      Defendant, Cheryl Britt, R.N. is a nurse licensed to practice in the Commonwealth of Massachusetts.

6.      Defendant, Jacqueline Papachriston, R.N. is a nurse licensed to practice in the Commonwealth of Massachusetts.

7.      Defendant, Jennifer Farmer, R.N. is a nurse licensed to practice in the Commonwealth of Massachusetts.

8.     Defendant, Patricia Lane, R.N. is a nurse licensed to practice in the Commonwealth of Massachusetts.

9.     Defendant, Dawn Bellorado, R.N. is a nurse licensed to practice in the Commonwealth of Massachusetts.

10.     Defendant, United States of America is the appropriate Defendant named in place of Greater Lawrence Family Health Center, under the Federal Tort Claims Act.

## Facts Common to All Counts

11.     This is a complaint for damages arising from substandard medical care rendered to Yacaira Pena during the birth of her son, Yadiel Isabel Pena, by Jennifer Bentwood, M.D., Catherine Mygatt, M.D., Jacqueline Papachriston, R.N., Cheryl Britt, R.N., Jennifer Farmer, R.N., Patricia Lane, R.N., Dawn Bellorado, R.N. and the United States of America (hereinafter, "the defendants").  Under the Federal Tort Claims Act, the United States of America is the appropriate defendant named in place of Greater Lawrence Family Health Center, which is a federally funded health clinic.  As a direct result of the substandard care rendered by the defendants, Yadiel Isabel Pena sustained severe and permanent personal injuries.

12.     The Jurisdiction of this Court is lawful under 28 U.S.C. § 1346(b) and proper as the plaintiff lives in Massachusetts.

13.     Venue is proper within this district under 28 U.S.C. § 1402(b) as the acts complained of occurred in the District of Massachusetts.

14.     The plaintiff has fully complied with the provisions of 28 U.S.C. §2675 of the Federal Tort Claims Act and all statutory prerequisites to the filing of this complaint have been satisfied.

15.     In August 2013, Yacaira Pena was a 33-year-old G2, P0 expecting her first child. Her last menstrual period (LMP) was on 6/17/13 and her estimated date of delivery (EDD) was 3/21/14 per ultrasound.

16.     On 3/11/14 at approximately 9:00 a.m., Ms. Pena was seen at Greater Lawrence Family Health Center for yellow vaginal discharge, pelvic pain, and low back pain which began three days prior. Ms. Pena was advised that she was in early labor, and she was advised of the signs that should prompt her to present to labor and delivery (L&D).

17.     At 11:30 a.m., Ms. Pena had spontaneous rupture of membranes (SROM). At 12:04 p.m., Ms. Pena was admitted to Lawrence General Hospital for contractions. The nurse caring for her initially was Elaine Warwick, R.N.  At 1:30 p.m., Nurse Warwick noted that the FHR was 135 with moderate variability and accelerations.  She also noted that a fetal arrhythmia was evident. Nurse Warwick noted that family medicine resident Richard Moore, M.D. examined Ms. Pena. His assessment of the tracing was that it revealed a FHR of 130 with moderate variability and accelerations, but that the heart rate was irregular. Because of the irregular heart rate, Dr. Moore

planned to have a neonatologist present at delivery, and planned to discuss Ms. Pena's condition with the high risk obstetrician (HROB). He noted that he then discussed Ms. Pena's condition with family medicine physician Wendy Barr, M.D. After the unnamed HROB was consulted, Ms. Pena's situation was discussed with maternal fetal medicine at Tufts who recommended proceeding with delivery at Lawrence General Hospital and to consider a fetal scalp electrode if it became difficult to assess the baby.

18.     At 2:00 p.m., Nurse Warwick noted that the FHR was 140 with moderate variability and accelerations. At 2:02 p.m., Dr. Barr documented a Category 1 tracing in the 130s with moderate variability, accelerations, and auditory skipped beats. Dr. Barr planned for expectant management with Pitocin if there was no progress in 2-3 hours' time. She also planned for continuous external fetal monitoring (CEFM) for auditory skipped beats, and the presence of a neonatologist at delivery.

19.     At 2:30 p.m., Nurse Warwick noted that the FHR was 130 with moderate variability and accelerations. No decelerations were noted at that time.

20.     At 2:38 p.m., Nurse Warwick administered Penicillin. Following this, at 3:30 p.m., Nurse Warwick noted a variable deceleration lasting 30 seconds as Ms. Pena was turning. The FHR was 124 with a continued fetal arrhythmia. Dr. Bay and family medicine resident Elise Laflamme, M.D. came in to the room and Nurse Warwick gave report to Cheryl Britt, R.N.

21.     At 3:35 p.m., Nurse Britt noted that a vaginal examination revealed 2/90/-2. At 3:38 p.m., Dr. Bay wrote a progress note. He noted that he had been called into the room for a variable deceleration and difficulty getting the FHTs. He noted that there was good recovery to baseline. He described the tracing as a guarded Category 1. He noted that maternal fetal medicine had recommended that Ms. Pena deliver her infant at Lawrence General Hospital. He would consider a fetal scalp electrode (FSE) if the tracing looked worse, and planned to discuss an epidural vs. stadol or Benadryl vs. nothing.

22.     At 4:00 p.m., Nurse Britt noted that the FHR was 130 with moderate variability and accelerations. At 4:06 p.m., Nurse Britt stopped the infusion of lactated ringers. She noted at 4:14 p.m. that Dr. Bay was in to see Ms. Pena and discuss pain control options. At 4:15 p.m., Nurse Britt restarted the lactated ringers and at 4:20 p.m., Stadol with Benadryl was administered via IV. At 4:30 p.m., Nurse Britt noted that the FHR was 125 with moderate variability and accelerations. At 4:57 p.m., Nurse Britt started Pitocin at 2 mu/min. At 5:00 p.m., she noted that the FHR was 130 with moderate variability and accelerations.

23.     At 5:30 p.m., Nurse Britt noted that the FHR was 125 with moderate variability and accelerations. At 6:30 p.m., Nurse Britt noted that the FHR was 125 with moderate variability and one acceleration in the last 30 minutes. She administered a second dose of Penicillin at 6:45 p.m., and at 6:52 p.m., she noted that Ms. Pena was sleeping in naps and that the fetal arrhythmia was still audible. At 7:00 p.m., Nurse Britt noted that the FHR was 125 with moderate variability and accelerations.

24.     At approximately 7:15 p.m., family medicine resident Catherine Mygatt, M.D. examined Ms. Pena and a vaginal examination revealed 1-2/90/-2. She noted that the FHR was 130 with moderate variability and accelerations, with an audible fetal cardiac arrhythmia. Dr. Mygatt noted that Ms. Pena's pain was controlled with Stadol and that an epidural wasn't desired at that time. Dr. Mygatt planned for a spontaneous vaginal delivery (SVD), and noted that she discussed Ms. Pena's condition with family medicine attending/obstetrics fellow Jennifer Bentwood, M.D. and Andrew Smith, M.D., who is a family medicine attending physician who completed a fellowship in obstetrics. The medical records indicate that Dr. Bentwood was the family medicine attending physician on call but was also an obstetrics fellow within the Lawrence Family Medicine Residency Program for the 2013-2014 academic year.

25.     At 7:25 p.m., Jacqueline Papachriston, R.N. repositioned Ms. Pena from sitting to semifowlers (SF) to obtain the FHR tracing. At 7:30 p.m., Nurse Britt noted that the FHR was 130 with moderate variability and accelerations. Nurse Papachriston administered Mylanta 30 ml by mouth at 7:36 p.m. At 7:49 p.m., Nurse Britt noted that Dr. Mygatt had come in to see Ms. Pena and that the plan was to start Pitocin.

26.     By 7:30 p.m. on 3/11/14, Ms. Pena's fetal heart monitor tracing was difficult to interpret via the external fetal heart monitor. The standard of care required placement of a fetal scalp electrode, as recommended by the maternal fetal medicine provider, in order to better visualize the fetal heart rate such that an appropriate response could be provided.

27.     At 8:00 p.m., Nurse Britt noted that the FHR was 125 with moderate variability without accelerations or decelerations. At 8:30 p.m., Nurse Britt noted that the FHR was 135 with moderate variability and accelerations. At 9:00 p.m., she noted that the FHR was 135 with moderate variability and accelerations. Ms. Pena requested pain medication at 9:02 p.m., and Nurse Britt provided a verbal report to Dr. Mygatt.

28.     At 9:22 p.m., Nurse Britt increased the Pitocin to 4 mu/min. At 9:26 p.m., she repositioned Ms. Pena to the right lateral position. At 9:30 p.m., she documented a FHR of 140 with moderate variability and accelerations. At 10:00 p.m., Jennifer Farmer, R.N. documented a FHR of 135 with moderate variability. At 10:09 p.m., Nurse Britt noted that Dr. Mygatt was present and reviewed the tracing. Dr. Mygatt noted that Ms. Pena was feeling better after taking Maalox. A SVE revealed 1-2/90/-2 and Dr. Mygatt found the FHR to be Category 1 with a FHR of 130, moderate variability, and accelerations. Dr. Mygatt planned to increase the Pitocin and she planned for a SVD. She discussed Ms. Pena's condition with Dr. Bentwood.

29.     Thereafter, Nurse Britt increased the Pitocin to 6 mu/min and also noted that Stadol 1 mg was administered. Ms. Pena moved about in bed at approximately 10:27 p.m. and the maternal pulse was recorded briefly. At 10:30 p.m., Nurse Farmer noted that the FHR was 140 with moderate variability. At 10:45 p.m., Nurse Britt increased the Pitocin to 8 mu/min and administered another dose of Penicillin. At 11:00 p.m., Nurse Farmer documented a FHR of 140 with moderate variability. At 11:15 p.m., she turned Ms. Pena to the right lateral position. Nurse Britt provided report to Patricia Lane, R.N. at 11:21 p.m. and Nurse Lane then noted that the fetal arrhythmia was audible and the FH was not always recording.

30.     At 11:30 p.m., Nurse Lane noted that the FHR was 140 with moderate variability, no accelerations, and variable decelerations. She turned Ms. Pena to semi fowlers and readjusted the monitor. At 12:00 a.m. on 3/12/14, she noted the FHR was 135 with moderate variability and no accelerations.  She then increased the Pitocin to 10 mu/min at 12:02 a.m. Ms. Pena had a temperate of 99.1 degrees Fahrenheit at 12:04 a.m., and at 12:25 a.m. she got out of bed to go to the BR to void. At 12:30 a.m., Nurse Lane noted the FHR was 135 with moderate variability and no accelerations.  She then increased the Pitocin to 12 mu/min. At 12:36 a.m., Dawn Bellorado, R.N. was in the room. At 12:39 a.m., there was a FHR alarm for bradycardia.

31.     At 12:52 a.m., Nurse Lane noted that Ms. Pena was sitting up and there was difficulty tracing the heart rate due to maternal activity. At 12:53 a.m., there was a bradycardia alarm on the FHR monitor. At 12:59 a.m., Ms. Pena had the urge to push. At 1:00 a.m., Nurse Lane noted that the FHR was 140 with periods of moderate and minimal variability and two accelerations in the last 30 minutes. At 1:04 a.m., the resident team was called in to the room. At that time the fetal heart rate was noted to be in the 130s. Dr. Mygatt performed an examination at approximately 1:05 a.m. and found Ms. Pena's cervix to be 2/100. A fetal heart deceleration was noted to coincide with the examination. At 1:06 a.m., Dr. Mygatt noted that the baby's heart rate was bradycardic down to the 60s and family medicine intern William Martin, M.D. notified Dr. Bentwood. Nurse Bellorado noted that nurses and physicians were in the room at 1:08 a.m., and Nurse Lane stopped the Pitocin at 1:10 a.m. She also turned Ms. Pena to her left side and applied oxygen at 10 liters via mask.  Dr. Bentwood noted that she arrived at that time. Dr. Mygatt noted that no cord was appreciated on examination, and there was no response to scalp stimulation.  At 1:11 a.m., Dr. Bentwood called Dr. Smith to prepare for a STAT cesarean section (c/s). She later noted that Ms. Pena was being resuscitated with oxygen (O2), IVF, and position changes. At 1:12 a.m., Dr. Mygatt placed a FSE.  This confirmed that the FHR was in the 60s.

32.      Following placement of the FSE at 1:12 a.m., there was a clear and continuous reading of the FHR.   The initial bradycardia alarm sounded at 12:39 a.m. There were approximately 30 additional minutes of tracings prior to the identification of fetal bradycardia by the team caring for Ms. Pena.  Placement of a FSE earlier in her course would have allowed for early identification of persistent fetal heart rate decelerations and a nonreassuring tracing prior to the development of a terminal bradycardia.  Had the FSE been in place consistent with the standard of care, sufficient signs of fetal distress would have been evident allowing for an emergent cesarean section to be called shortly after 12:40 a.m., thereby reducing Yadiel's risk for severe and permanent neurological injury.

33.     Nurse Lane then noted that the FH was down below 60 for 5-6 minutes, and that Ms. Pena had been turned from side to side.  At approximately 1:14 a.m., an external monitor was temporarily placed and showed a tracing in the 150s. Within 30 seconds, the external fetal monitor was concordant with the FSE and maternal pulse oximetry also began recording on the monitor. Collectively, this clearly demonstrated that the fetal heart rate was indeed low and that the maternal heart rate was distinct and different from that.

34.     Ms. Pena was medicated with Pepcid at 1:15 a.m.  Dr. Bentwood noted that HROB was called at 1:15 a.m. An examination revealed 3/90/-2, as well as a small amount of blood. The tracing was Category 3 in Dr. Bentwood's assessment. Dr. Smith noted that he was informed of

the terminal bradycardia at 1:17 a.m., by Dr. Bentwood. His operative note reflects that per hospital policy, he was the surgical family practice obstetrical attending and was home at that time. Dr. Smith asked Dr. Bentwood to call anesthesia to prepare for an emergency cesarean section and he immediately proceeded to the hospital from his home 20 minutes away. En route, he called the hospital and learned that the anesthesiologist was also driving in from home. As such, it was not even possible for an emergency cesarean section to be performed by the family practice obstetrics fellow.

35.     Nurse Bellorado noted that at 1:19 a.m., she notified anesthesia of the need for the cesarean section, and noted that anesthesiologist Carolyn Galiza, M.D. was on her way in.

36.     At 1:26 a.m., Ms. Pena was turned from side to side by Nurse Lane. An IV bolus was started at 1:30 a.m. in preparation for the cesarean section. Nurse Lane also notified the physician of Ms. Pena's laboratory abnormalities. At 1:37 a.m., the anesthesiologist entered the operating room with Ms. Pena. At 1:38 a.m., Dr. Smith entered the operating room.

37.     The indication for the cesarean section was terminal bradycardia and fetal distress. The section was performed by the attending physician, Dr. Smith, as well as Dr. Bentwood, the fellow. Dr. Martin was also involved in the cesarean section. The incision was made at 1:47 a.m., after anesthesia cleared Dr. Smith to begin the section. The amniotic sac was ruptured and the fluid was clear, but at the moment the uterus was entered and the amniotic sac was ruptured, a dark blood clot was visualized emerging from within the uterus. The baby, Yadiel Pena, was delivered at 1:48 a.m. The placenta was then removed with traction and the uterus was exteriorized and cleared of clot and debris.

38.     Baby Yadiel was found to be limp upon delivery at 1:48 a.m. on 3/12/14, with no respiratory effort at the uterus. No heart rate was palpated or auscultated. He received positive pressure ventilation (PPV) for 30 seconds, and the chest compressions. He was intubated at two minutes of life with 100% oxygen. At four minutes of life, he was given epinephrine (epi) via the endotracheal tube (ETT), and a HR was auscultated at seven minutes of life. A normal saline (NS) bolus was given at 15 mins of life via peripheral IV (PIV). Only after the NS was the peripheral pulse oximetry able to pick up the saturations. The baby was then transferred to the special care nursery (SCN) for further management.

39.     Baby Yadiel's Apgar Scores were 0 at 1 minute, 0 at 5 minutes, 4 at 10 minutes, 5 at 15 minutes, and 5 at 20 minutes. Yadiel's arterial umbilical cord blood pH was 6.81 (normal: 7.30-7.50).

40.     Placental pathology revealed florid acute chorioamnionitis, funisitis or acute inflammation of the umbilical cord, disrupted decidual plate with hemorrhage, possibly representing abruption, and subchorionic fibrin deposition. There was a site of rupture at one of the margins.

41.     Dr. Smith reviewed the strip after the cesarean section and noted that he believed the times at which the monitor was showing a tracing in the 50s was due to monitor interpretation of fetal arrhythmia and that this did not represent fetal bradycardia. The fetal arrhythmia was

audibly noted by the team during the day and the case was reviewed with the MFM in the afternoon prior to the cesarean section and a plan was made to have neonatology at the delivery.

42.     Yadiel was subsequently transferred to Tufts Medical Center where he was diagnosed with hypoxic ischemic injury. At 3:30 a.m., the team from Tufts Medical Center arrived to transfer Yadiel. He was passively cooled en route. On arrival at Tufts, Yadiel was taken to the MRI scanner and then to the neonatal intensive care unit (NICU). The MRI revealed slow diffusion involving the cortical mantle diffusely with associated T1 hyperintensity, most consistent with hypoxic ischemic injury. Yadiel underwent a long-term EEG which revealed severe diffuse neuronal dysfunction and no definite seizure was captured. Of note, Yadiel was on Phenobarbital at the time of the examination. Yadiel's head circumference on this day was 33.5 cm (37.5[th] percentile).

43.     On 3/19/14, Yadiel underwent another brain MRI which showed continued evolution of his hypoxic ischemic injury, now with involvement of the basal ganglia and splenium of the corpus callosum.

44.     At the time of his discharge from Tufts and transfer back to Lawrence General Hospital on 4/4/14, Yadiel's head circumference remained 33.5 cm, unchanged from the day of his birth. Yadiel was hospitalized for the first two months of his life. His discharge diagnoses included seizures and neonatal encephalopathy. He required another hospitalization at Tufts prior to going home, and when he was discharged again from Tufts on 5/19/14, his head circumference was 35 cm – consistent with an acquired microcephaly.

45.     As of age four, Yadiel had diagnoses including spastic quadriplegic cerebral palsy, global developmental delays, insulin dependent diabetes mellitus (IDDM), and gastroesophageal reflux disease (GERD). He was walking with a walker, and although he was non-verbal he could understand much of what was being said to him.

46.     Continuous fetal heart monitoring is indicated in the presence of labor induction. This type of monitoring serves to identify abnormalities in the fetal heart rate such that the appropriate intervention can be taken. Methods of fetal heart rate monitoring include both external and internal monitoring. An external fetal heart rate monitor involves the placement of a transducer on the mother's abdomen, and the heart rate is picked up through the mother's abdominal/pelvic wall. An internal monitor such as a fetal scalp electrode involves the placement of a lead into the fetus's scalp. This is a far more accurate method of monitoring the fetal heart rate.

47.     An arrhythmia is an abnormal or irregular heart rate. Arrhythmias can occur in fetuses and may or may not represent a true cardiac abnormality. Suspected fetal arrhythmias can cause difficulty in the interpretation of a fetal heart monitor tracing when such monitoring is conducted externally. Therefore, placement of a fetal scalp electrode is indicated in the presence of a persistent suspected fetal arrhythmia with a discontinuous fetal heart tracing.

48.     Hypoxic ischemic encephalopathy (HIE) is a term used to describe a permanent brain injury caused by a lack of oxygen or below normal levels of blood flow to the brain. The brain needs a constant supply of oxygen in order to function properly. If oxygen fails to flow from the arteries

(blood vessels that carry blood away from the heart) to the brain tissue, or if there is a decreased amount of oxygen in the blood of the arteries, HIE can result. This damage can be an underlying cause of cerebral palsy, developmental delays, acquired microcephaly, spastic movement, gastrointestinal esophageal reflux disease meriting G tube placement, and seizures. The prognosis given to children with HIE is often bleak in terms of the child's future abilities and/or quality of life. The longer a fetus remains in a hostile uterine environment with an insufficient supply of oxygen, the more likely the baby is to develop a severe and permanent neurologic injury.

49.     The accepted standard of care in Massachusetts from 2014 through the present requires the average qualified family medicine physician, obstetrics fellow, and family medicine resident providing obstetric care to: 1) assess the fetal heart rate at regular intervals; 2) recognize and appreciate abnormal fetal heart tracings requiring emergent cesarean delivery; 3) recognize and appreciate discontinuous fetal heart monitor tracings requiring placement of a fetal scalp electrode; and 4) immediately place a fetal scalp electrode.

50.     The standard of care in Massachusetts from 2014 through the present requires the average qualified labor nurse to recognize and appreciate abnormal fetal heart tracings requiring emergent cesarean delivery, to recognize and appreciate discontinuous fetal heart tracings requiring the placement of a fetal scalp electrode, and to consult the attending physician such that the fetal scalp electrode could be placed.

51.     To a reasonable degree of medical certainty, the care and treatment rendered to Yacaira Pena and Yadiel Isabel Pena on 3/11/14 and 3/12/14 by Jennifer Bentwood, M.D. deviated from the accepted standard of care at the time for the average qualified family medicine attending physician and obstetrics fellow caring for an expectant mother undergoing induction of labor when Dr. Bentwood failed to review the fetal heart monitor tracings at regular intervals, and when Dr. Bentwood failed to heed the documented advice of the Tufts maternal fetal medicine physician and place a fetal scalp electrode at 7:30 p.m. on 3/11/14 in the presence of the discontinuous fetal heart tracing.

52.     As a direct result of the substandard care provided by Dr. Bentwood, Yadiel was not delivered until 1:48 a.m. on 3/12/14, greatly increasing his risk for severe and permanent neurological injury. Had Dr. Bentwood rendered care in accordance with the accepted standard of care, she would have ensured that a fetal scalp electrode was in place shortly after 7:30 p.m. on 3/11/14 in the presence of the discontinuous fetal heart tracing, a far more accurate representation of the fetal heart rate pattern would have been available on the monitor, Yadiel's distress would have been accurately represented far sooner in time, and more likely than not, Yadiel would have been delivered by emergent cesarean section shortly after 12:40 a.m. on 3/12/14, and more likely than not, he would have avoided the severe and permanent neurological injury with which he lives today.

53.     To a reasonable degree of medical certainty, the care and treatment rendered to Yacaira Pena and Yadiel Isabel Pena on 3/11/14 and 3/12/14 by Catherine Mygatt, M.D. deviated from the accepted standard of care at the time for the average qualified family medicine resident caring for an expectant mother undergoing induction of labor when Dr. Mygatt failed to recognize and appreciate the discontinuous fetal heart tracings at 7:49 p.m., and promptly place a fetal scalp electrode.

54.    As a direct result of Dr. Mygatt's deviations from the accepted standard of care, as outlined above, Yadiel was not delivered until 1:48 a.m. on 3/12/14, greatly increasing his risk for severe and permanent neurological injury.  Had Dr. Mygatt rendered care in accordance with the accepted standard of care, she would have ensured that the fetal scalp electrode was placed shortly after 7:49 p.m. on 3/11/14, a far more accurate representation of the fetal heart rate pattern would have been available on the monitor, Yadiel's distress would have been accurately represented far sooner in time, and more likely than not, Yadiel would have been delivered by emergent cesarean section shortly after 12:40 a.m. on 3/12/14, and more likely than not, he would have avoided the severe and permanent neurological injury with which he lives today.

55.    To a reasonable degree of medical certainty, the care and treatment rendered to Yacaira Pena and Yadiel Isabel Pena by Jacqueline Papachriston, R.N. on 3/11/14 deviated from the accepted standard of care at the time for the average qualified labor nurse when Nurse Papachriston failed to recognize and appreciate the discontinuous fetal heart tracings at 7:30 p.m., and when Nurse Papachriston failed to contact Dr. Bentwood to place a fetal scalp electrode.

56.    As a direct result of Nurse Papachriston's deviations from the accepted standard of care, as outlined above, Yadiel was not delivered until 1:48 a.m. on 3/12/14, greatly increasing his risk for severe and permanent neurological injury.  Had Nurse Papachriston rendered care in accordance with the accepted standard of care, she would have contacted Dr. Bentwood to place a fetal scalp electrode at 7:30 p.m. on 3/11/14 and this would have been placed shortly thereafter, a far more accurate representation of the fetal heart rate pattern would have been available on the monitor, Yadiel's distress would have been accurately represented far sooner in time, and more likely than not, Yadiel would have been delivered via emergent cesarean section shortly after 12:40 a.m. on 3/12/14, and more likely than not, he would have avoided the severe and permanent neurological injury with which he lives today

57.    To a reasonable degree of medical certainty, the care and treatment rendered to Yacaira Pena and Yadiel Isabel Pena by Cheryl Britt, R.N. on 3/11/14 deviated from the accepted standard of care at the time for the average qualified labor nurse when Nurse Britt failed to recognize and appreciate the discontinuous fetal heart tracings at 7:30 p.m., and when Nurse Britt failed to contact Dr. Bentwood to place a fetal scalp electrode.

58.    As a direct result of Nurse Britt's deviations from the accepted standard of care, as outlined above, Yadiel was not delivered until 1:48 a.m. on 3/12/14, greatly increasing his risk for severe and permanent neurological injury.  Had Nurse Britt rendered care in accordance with the accepted standard of care, she would have recognized and appreciated the discontinuous fetal heart tracings at 7:30 p.m., she would have contacted Dr. Bentwood to place a fetal scalp electrode and this would have been placed shortly thereafter, a far more accurate representation of the fetal heart rate pattern would have been available on the monitor, Yadiel's distress would have been accurately represented far sooner in time, and more likely than not, Yadiel would have been delivered via emergent cesarean section shortly after 12:40 a.m. on 3/12/14, and more likely than not, he would have avoided the severe and permanent neurological injury with which he lives today.

59.    To a reasonable degree of medical certainty, the care and treatment rendered to

Yacaira Pena and Yadiel Isabel Pena by Jennifer Farmer, R.N. on 3/11/14 deviated from the accepted standard of care at the time for the average qualified labor nurse when Nurse Farmer failed to recognize and appreciate the discontinuous fetal heart tracings upon her involvement at 10:00 p.m., and when Nurse Farmer failed to contact Dr. Bentwood to place a fetal scalp electrode.

60.     As a direct result of Nurse Farmer's deviations from the accepted standard of care, as outlined above, Yadiel was not delivered until 1:48 a.m. on 3/12/14, greatly increasing his risk for severe and permanent neurological injury.  Had Nurse Farmer rendered care in accordance with the accepted standard of care, she would have recognized and appreciated the discontinuous fetal heart tracings upon her involvement at 10:00 p.m., she would have contacted Dr. Bentwood to place a fetal scalp electrode and this would have been placed shortly thereafter, a far more accurate representation of the fetal heart rate pattern would have been available on the monitor, Yadiel's distress would have been accurately represented far sooner in time, and more likely than not, Yadiel would have been delivered via emergent cesarean section shortly after 12:40 a.m. on 3/12/14, and more likely than not, he would have avoided the severe and permanent neurological injury with which he lives today.

61.     To a reasonable degree of medical certainty, the care and treatment rendered to Yacaira Pena and Yadiel Isabel Pena by Patricia Lane, R.N. on 3/11/14 and 3/12/14 deviated from the accepted standard of care at the time for the average qualified labor nurse when Nurse Lane failed to recognize and appreciate the discontinuous fetal heart tracings as early as 11:30 p.m. on 3/11/14, and when Nurse Lane failed to contact Dr. Bentwood to place a fetal scalp electrode.

62.     As a direct result of Nurse Lane's deviations from the accepted standard of care, as outlined above, Yadiel was not delivered until 1:48 a.m. on 3/12/14, greatly increasing his risk for severe and permanent neurological injury.  Had Nurse Lane rendered care in accordance with the accepted standard of care, she would have recognized and appreciated the discontinuous fetal heart tracings at 11:30 p.m. on 3/11/14, she would have contacted Dr. Bentwood to place a fetal scalp electrode and this would have been placed shortly thereafter, a far more accurate representation of the fetal heart rate pattern would have been available on the monitor, Yadiel's distress would have been accurately represented far sooner in time, and more likely than not, Yadiel would have been delivered via emergent cesarean section shortly after 12:40 a.m. on 3/12/14, and more likely than not, he would have avoided the severe and permanent neurological injury with which he lives today.

63.     To a reasonable degree of medical certainty, the care and treatment rendered to Yacaira Pena and Yadiel Isabel Pena by Dawn Bellorado, R.N. on 3/12/14 deviated from the accepted standard of care at the time for the average qualified labor nurse when Nurse Bellorado failed to recognize and appreciate the discontinuous fetal heart tracing upon her involvement at 12:36 a.m., and when she failed to contact Dr. Bentwood to place a fetal scalp electrode.

64.     As a direct result of Nurse Bellorado's deviations from the accepted standard of care, as outlined above, Yadiel was not delivered until 1:48 a.m. on 3/12/14, greatly increasing his risk for severe and permanent neurological injury.  Had Nurse Bellorado rendered care in accordance with the accepted standard of care, she would have recognized and appreciated the discontinuous fetal heart tracings upon her involvement at 12:36 a.m., she would have contacted Dr. Bentwood to place a fetal scalp electrode and this would have been placed shortly thereafter, a far more accurate

representation of the fetal heart rate pattern would have been available on the monitor, Yadiel's distress would have been accurately represented far sooner in time, and more likely than not, Yadiel would have been delivered via emergent cesarean section shortly after 12:40 a.m. on 3/12/14, and more likely than not, he would have avoided the severe and permanent neurological injury with which he lives today.

65. The care and treatment rendered to Yacaira Pena and her son Yadiel Isabel Pena by Jennifer Bentwood, M.D., Catherine Mygatt, M.D., Jacqueline Papchriston, R.N., Cheryl Britt, R.N., Jennifer Farmer, R.N., Patricia Lane, R.N., and Dawn Bellorado, R.N. deviated from the accepted standard of care, directly resulting in Yadiel's severe and permanent neurological injury.

## Count I.

1. The plaintiff, Yadiel Isabel Pena, is a minor who brings this action through his Mother and next friend, Yacaira Pena, a resident of Waltham, Middlesex County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, Jennifer Bentwood, M.D., was at all times relevant to this complaint a physician licensed to practice her profession in the Commonwealth of Massachusetts.

4. At all times relevant to this complaint, the defendant, Jennifer Bentwood, M.D., represented and held herself out to be a physician, skilled in the treatment of various illnesses and conditions and, in particular, represented to the minor plaintiff's parents that she was knowledgeable, competent, and qualified to diagnose and treat the minor plaintiff and his mother on or about 3/11/14 - 3/12/14.

5. On or about 3/11/14 - 3/12/14, the minor plaintiff's mother submitted herself and the minor plaintiff to the care and treatment of the defendant, Jennifer Bentwood, M.D., who negligently, carelessly, and without regard for the minor plaintiff's and his mother's health and well being, treated the minor plaintiff and his mother in a manner resulting in the minor plaintiff's severe personal injuries.

6. The injuries sustained by the minor plaintiff, Yadiel Isabel Pena, were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by the defendant, Jennifer Bentwood, M.D., including, but not limited to the following:

   a. Defendant's misrepresentations to the minor plaintiff's parents that she was knowledgeable, skillful, and competent to diagnose and treat the minor plaintiff and his mother on or about 3/11/14 - 3/12/14;

   b. Defendant's failure to adequately and properly diagnose the minor plaintiff's and his mother's medical condition on or about 3/11/14 - 3/12/14, and her failure to prescribe proper and timely treatment for said condition;

c. Defendant's failure to recognize, or have the knowledge to recognize her inability and lack of skill to diagnose and treat the minor plaintiff and his mother, when the defendant knew or should have known in the exercise of due care, the foreseeable consequences of her inability and failure to properly and skillfully provide the minor plaintiff and his mother with acceptable medical and diagnostic services;

d. Defendant's failure to possess or negligent failure to exercise that degree of skill, training, and care as is possessed and exercised by average qualified members of the medical profession practicing her specialty; and

e. Defendant's failure to inform and to warn of the risks involved in or associated with the minor plaintiff's and his mother's condition and failure to inform and to warn about the treatment of said condition.

7. The minor plaintiff and his mother did not discover, nor could they have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 12/7/18, which is less than two (2) years from the presentment of her administrative tort claim on 4/15/20. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

8. As a direct and proximate result of the negligence, carelessness, and unskillfulness of the defendant, Jennifer Bentwood, M.D., the minor plaintiff, Yadiel Isabel Pena, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for his medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and his ability to enjoy life has been permanently adversely affected.

WHEREFORE, the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, prays judgment against the defendant, Jennifer Bentwood, M.D., in an amount which is just and appropriate to compensate him for his injuries, together with interest and costs.

## Count II.

1. The minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, repeats and reavers fully herein Paragraphs One through Eight of Count I of this complaint as if each were set forth here in its entirety.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. On or about 3/11/14 - 3/12/14, the defendant, Jennifer Bentwood, M.D., contracted with the minor plaintiff's parents to provide professional services related to the minor plaintiff's and his mother's medical care and treatment.

4. The defendant, Jennifer Bentwood, M.D., expressly and impliedly warranted to the minor plaintiff's parents that she would perform and render said professional services in accordance with accepted standards for the practice of medicine, and that she would possess and exercise

that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing her specialty.

5. On or about 3/11/14 - 3/12/14, the defendant, Jennifer Bentwood, M.D., breached her express and implied warranties by failing to perform and render professional services in accordance with accepted standards for the practice of medicine, and by failing to possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing her specialty.

6. The minor plaintiff and his mother did not discover, nor could they have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 12/7/18, which is less than two (2) years from the presentment of her administrative tort claim on 4/15/20. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

7. As a direct and proximate result of the defendant, Jennifer Bentwood, M.D.'s breach of express and implied warranties, the minor plaintiff, Yadiel Isabel Pena, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for his medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and his ability to enjoy life has been permanently adversely affected.

WHEREFORE, the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, prays judgment against the defendant, Jennifer Bentwood, M.D., in an amount which is just and appropriate to compensate him for his injuries, together with interest and costs.

## Count III.

1. The minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, repeats and reavers fully herein Paragraphs One through Eight of Count I and Paragraphs One through Seven of Count II of this complaint and the facts and the allegations set forth above as if each were set forth here in its entirety.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. On or about 3/11/14 - 3/12/14, average qualified members of the medical profession practicing the defendant's specialty knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the minor plaintiff and his mother.

4. On or about 3/11/14 - 3/12/14, the defendant, Jennifer Bentwood, M.D., knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the minor plaintiff and his mother.

5. On or about 3/11/14 - 3/12/14, the defendant, Jennifer Bentwood, M.D., did not inform the minor plaintiff's parents of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the minor plaintiff and his mother.

6. If the defendant, Jennifer Bentwood, M.D., had informed the minor plaintiff's parents of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the minor plaintiff and his mother, neither the minor plaintiff's parents nor a reasonable person in their position would have elected the defendant's choice of treatment.

7. The alternatives to and the risks and potential consequences of the defendant's choice of treatment were material to a decision by the minor plaintiff's parents and a reasonable person in their position as to whether to undergo the defendant's choice of treatment.

8. The minor plaintiff and his mother did not discover, nor could they have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 12/7/18, which is less than two (2) years from the presentment of her administrative tort claim on 4/15/20. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

9. As a direct and proximate result of the defendant, Jennifer Bentwood, M.D.'s failure to inform the minor plaintiff's parents of the alternatives to and risks and potential consequences of the defendant's treatment, the minor plaintiff, Yadiel Isabel Pena, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for his medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and his ability to enjoy life has been permanently adversely affected.

WHEREFORE, the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, prays judgment against the defendant, Jennifer Bentwood, M.D., in an amount which is just and appropriate to compensate him for his injuries, together with interest and costs.

## Count IV.

1. The plaintiff, Yacaira Pena, is the mother of Yadiel Isabel Pena, and the person responsible for his support and medical care and a resident of Waltham, Middlesex County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, Jennifer Bentwood, M.D., was at all times relevant to this complaint a physician licensed to practice in the Commonwealth of Massachusetts.

4. The plaintiff, Yacaira Pena, repeats and reavers fully herein the allegations contained in the aforementioned Counts pleaded by the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, against the defendant, Jennifer Bentwood, M.D., in this complaint as if each were set forth here in its entirety.

5. As a direct and proximate result of the defendant, Jennifer Bentwood, M.D.'s negligence, breach of warranties and failure to obtain informed consent, the plaintiff, Yacaira Pena, has

incurred and will continue to incur great expense for the medical, surgical, and hospital care and treatment of Yadiel Isabel Pena, throughout the life of Yadiel Isabel Pena.

WHEREFORE, the plaintiff, Yacaira Pena, prays judgment against the defendant, Jennifer Bentwood, M.D., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count V.

1. The plaintiff, Yacaira Pena, is the mother of Yadiel Isabel Pena, and a resident of Waltham, Middlesex County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, Jennifer Bentwood, M.D., was at all times relevant to this complaint a physician licensed to practice in the Commonwealth of Massachusetts.

4. The plaintiff, Yacaira Pena, repeats and reavers fully herein the allegations contained in the aforementioned Counts pleaded by the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, against the defendant, Jennifer Bentwood, M.D., in this complaint as if each were set forth here in its entirety.

5. As a direct and proximate result of the defendant, Jennifer Bentwood, M.D.'s negligence, breach of warranties and failure to obtain informed consent, the plaintiff, Yacaira Pena, has suffered and will continue to suffer severe emotional distress resulting in substantial physical injury.

WHEREFORE, the plaintiff, Yacaira Pena, prays judgment against the defendant, Jennifer Bentwood, M.D., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count VI.

1. The plaintiff, Yacaira Pena, is the mother of Yadiel Isabel Pena, and a resident of Waltham, Middlesex County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, Jennifer Bentwood, M.D., was at all times relevant to this complaint a physician licensed to practice in the Commonwealth of Massachusetts.

4. The plaintiff, Yacaira Pena, repeats and reavers fully herein the allegations contained in the aforementioned Counts pleaded by the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, against the defendant, Jennifer Bentwood, M.D., in this complaint as if each were set forth here in its entirety.

5. As the direct and proximate result of the negligence, breach of warranties, and failure to obtain informed consent of the defendant, Jennifer Bentwood, M.D., the plaintiff, Yacaira Pena, has had severely restricted the benefit of the full services, society, and affection of Yadiel Isabel Pena.

WHEREFORE, the plaintiff, Yacaira Pena, prays judgment against the defendant, Jennifer Bentwood, M.D., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count VII.

1. The plaintiff, Yadiel Isabel Pena, is a minor who brings this action through his Mother and next friend, Yacaira Pena, a resident of Waltham, Middlesex County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, Catherine Mygatt, M.D., was at all times relevant to this complaint a physician licensed to practice her profession in the Commonwealth of Massachusetts.

4. At all times relevant to this complaint, the defendant, Catherine Mygatt, M.D., represented and held herself out to be a physician, skilled in the treatment of various illnesses and conditions and, in particular, represented to the minor plaintiff's parents that she was knowledgeable, competent, and qualified to diagnose and treat the minor plaintiff and his mother on or about 3/11/14 - 3/12/14.

5. On or about 3/11/14 - 3/12/14, the minor plaintiff's mother submitted herself and the minor plaintiff to the care and treatment of the defendant, Catherine Mygatt, M.D., who negligently, carelessly, and without regard for the minor plaintiff's and his mother's health and well being, treated the minor plaintiff and his mother in a manner resulting in the minor plaintiff's severe personal injuries.

6. The injuries sustained by the minor plaintiff, Yadiel Isabel Pena, were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by the defendant, Catherine Mygatt, M.D., including, but not limited to the following:

   a. Defendant's misrepresentations to the minor plaintiff's parents that she was knowledgeable, skillful, and competent to diagnose and treat the minor plaintiff and his mother on or about 3/11/14 - 3/12/14;

   b. Defendant's failure to adequately and properly diagnose the minor plaintiff's and his mother's medical condition on or about 3/11/14 - 3/12/14, and her failure to prescribe proper and timely treatment for said condition;

   c. Defendant's failure to recognize, or have the knowledge to recognize her inability and lack of skill to diagnose and treat the minor plaintiff and his mother, when the defendant knew or should have known in the exercise of due care, the foreseeable

consequences of her inability and failure to properly and skillfully provide the minor plaintiff and his mother with acceptable medical and diagnostic services;

d. Defendant's failure to possess or negligent failure to exercise that degree of skill, training, and care as is possessed and exercised by average qualified members of the medical profession practicing her specialty; and

e. Defendant's failure to inform and to warn of the risks involved in or associated with the minor plaintiff's and his mother's condition and failure to inform and to warn about the treatment of said condition.

7. The minor plaintiff and his mother did not discover, nor could they have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 12/7/18, which is less than two (2) years from the presentment of her administrative tort claim on 4/15/20. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

8. As a direct and proximate result of the negligence, carelessness, and unskillfulness of the defendant, Catherine Mygatt, M.D., the minor plaintiff, Yadiel Isabel Pena, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for his medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and his ability to enjoy life has been permanently adversely affected.

WHEREFORE, the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, prays judgment against the defendant, Catherine Mygatt, M.D., in an amount which is just and appropriate to compensate him for his injuries, together with interest and costs.

## Count VIII.

1. The minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, repeats and reavers fully herein Paragraphs One through Eight of Count VII of this complaint as if each were set forth here in its entirety.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. On or about 3/11/14 - 3/12/14, the defendant, Catherine Mygatt, M.D., contracted with the minor plaintiff's parents to provide professional services related to the minor plaintiff's and his mother's medical care and treatment.

4. The defendant, Catherine Mygatt, M.D., expressly and impliedly warranted to the minor plaintiff's parents that she would perform and render said professional services in accordance with accepted standards for the practice of medicine, and that she would possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing her specialty.

5. On or about 3/11/14 - 3/12/14, the defendant, Catherine Mygatt, M.D., breached her express and implied warranties by failing to perform and render professional services in accordance with accepted standards for the practice of medicine, and by failing to possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing her specialty.

6. The minor plaintiff and his mother did not discover, nor could they have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 12/7/18, which is less than two (2) years from the presentment of her administrative tort claim on 4/15/20. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

7. As a direct and proximate result of the defendant, Catherine Mygatt, M.D.'s breach of express and implied warranties, the minor plaintiff, Yadiel Isabel Pena, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for his medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and his ability to enjoy life has been permanently adversely affected.

WHEREFORE, the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, prays judgment against the defendant, Catherine Mygatt, M.D., in an amount which is just and appropriate to compensate him for his injuries, together with interest and costs.

## Count IX.

1. The minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, repeats and reavers fully herein Paragraphs One through Eight of Count VII and Paragraphs One through Seven of Count VII of this complaint as if each were set forth here in its entirety.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. On or about 3/11/14 - 3/12/14, average qualified members of the medical profession practicing the defendant's specialty knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the minor plaintiff and his mother.

4. On or about 3/11/14 - 3/12/14, the defendant, Catherine Mygatt, M.D., knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the minor plaintiff and his mother.

5. On or about 3/11/14 - 3/12/14, the defendant, Catherine Mygatt, M.D., did not inform the minor plaintiff's parents of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the minor plaintiff and his mother.

6. If the defendant, Catherine Mygatt, M.D., had informed the minor plaintiff's parents of the alternatives to and risks and potential consequences of the defendant's choice of treatment of

the minor plaintiff and his mother, neither the minor plaintiff's parents nor a reasonable person in their position would have elected the defendant's choice of treatment.

7. The alternatives to and the risks and potential consequences of the defendant's choice of treatment were material to a decision by the minor plaintiff's parents and a reasonable person in their position as to whether to undergo the defendant's choice of treatment.

8. The minor plaintiff and his mother did not discover, nor could they have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 12/7/18, which is less than two (2) years from the presentment of her administrative tort claim on 4/15/20. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

9. As a direct and proximate result of the defendant, Catherine Mygatt, M.D.'s failure to inform the minor plaintiff's parents of the alternatives to and risks and potential consequences of the defendant's treatment, the minor plaintiff, Yadiel Isabel Pena, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for his medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and his ability to enjoy life has been permanently adversely affected.

WHEREFORE, the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, prays judgment against the defendant, Catherine Mygatt, M.D., in an amount which is just and appropriate to compensate him for his injuries, together with interest and costs.

## Count X.

1. The plaintiff, Yacaira Pena, is the mother of Yadiel Isabel Pena, and the person responsible for his support and medical care and a resident of Waltham, Middlesex County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, Catherine Mygatt, M.D., was at all times relevant to this complaint a physician licensed to practice in the Commonwealth of Massachusetts.

4. The plaintiff, Yacaira Pena, repeats and reavers fully herein the allegations contained in the aforementioned Counts pleaded by the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, against the defendant, Catherine Mygatt, M.D., in this complaint as if each were set forth here in its entirety.

5. As a direct and proximate result of the defendant, Catherine Mygatt, M.D.'s negligence, breach of warranties and failure to obtain informed consent, the plaintiff, Yacaira Pena, has incurred and will continue to incur great expense for the medical, surgical, and hospital care and treatment of Yadiel Isabel Pena, throughout the life of Yadiel Isabel Pena.

WHEREFORE, the plaintiff, Yacaira Pena, prays judgment against the defendant, Catherine Mygatt, M.D., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XI.

1. The plaintiff, Yacaira Pena, is the mother of Yadiel Isabel Pena, and a resident of Waltham, Middlesex County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, Catherine Mygatt, M.D., was at all times relevant to this complaint a physician licensed to practice in the Commonwealth of Massachusetts.

4. The plaintiff, Yacaira Pena, repeats and reavers fully herein the allegations contained in the aforementioned Counts pleaded by the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, against the defendant, Catherine Mygatt, M.D., in this complaint as if each were set forth here in its entirety.

5. As a direct and proximate result of the defendant, Catherine Mygatt, M.D.'s negligence, breach of warranties and failure to obtain informed consent, the plaintiff, Yacaira Pena, has suffered and will continue to suffer severe emotional distress resulting in substantial physical injury.

WHEREFORE, the plaintiff, Yacaira Pena, prays judgment against the defendant, Catherine Mygatt, M.D., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XII.

1. The plaintiff, Yacaira Pena, is the mother of Yadiel Isabel Pena, and a resident of Waltham, Middlesex County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, Catherine Mygatt, M.D., was at all times relevant to this complaint a physician licensed to practice in the Commonwealth of Massachusetts.

4. The plaintiff, Yacaira Pena, repeats and reavers fully herein the allegations contained in the aforementioned Counts pleaded by the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, against the defendant, Catherine Mygatt, M.D., in this complaint as if each were set forth here in its entirety.

5. As the direct and proximate result of the negligence, breach of warranties, and failure to obtain informed consent of the defendant, Catherine Mygatt, M.D., the plaintiff, Yacaira Pena, has

had severely restricted the benefit of the full services, society, and affection of Yadiel Isabel Pena.

WHEREFORE, the plaintiff, Yacaira Pena, prays judgment against the defendant, Catherine Mygatt, M.D., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XIII.

1. The plaintiff, Yadiel Isabel Pena, is a minor who brings this action through his Mother and next friend, Yacaira Pena, a resident of Waltham, Middlesex County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, Jacqueline Papachriston, R.N., was at all times relevant to this complaint a nurse licensed to practice her profession in the Commonwealth of Massachusetts.

4. At all times relevant to this complaint, the defendant, Jacqueline Papachriston, R.N., represented and held herself out to be a nurse, skilled in the treatment of various illnesses and conditions and, in particular, represented to the minor plaintiff's parents that she was knowledgeable, competent, and qualified to diagnose and treat the minor plaintiff and his mother on or about 3/11/14.

5. On or about 3/11/14, the minor plaintiff's mother submitted herself and the minor plaintiff to the care and treatment of the defendant, Jacqueline Papachriston, R.N., who negligently, carelessly, and without regard for the minor plaintiff's and his mother's health and well being, treated the minor plaintiff and his mother in a manner resulting in the minor plaintiff's severe personal injuries.

6. The injuries sustained by the minor plaintiff, Yadiel Isabel Pena, were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by the defendant, Jacqueline Papachriston, R.N., including, but not limited to the following:

    a. Defendant's misrepresentations to the minor plaintiff's parents that she was knowledgeable, skillful, and competent to diagnose and treat the minor plaintiff and his mother on or about 3/11/14;

    b. Defendant's failure to adequately and properly diagnose the minor plaintiff's and his mother's medical condition on or about 3/11/14, and her failure to prescribe proper and timely treatment for said condition;

    c. Defendant's failure to recognize, or have the knowledge to recognize her inability and lack of skill to diagnose and treat the minor plaintiff and his mother, when the defendant knew or should have known in the exercise of due care, the foreseeable consequences of her inability and failure to properly and skillfully provide the minor plaintiff and his mother with acceptable nursing services;

d.  Defendant's failure to possess or negligent failure to exercise that degree of skill, training, and care as is possessed and exercised by average qualified members of the nursing profession practicing her specialty; and

e.  Defendant's failure to inform and to warn of the risks involved in or associated with the minor plaintiff's and his mother's condition and failure to inform and to warn about the treatment of said condition.

7.  The minor plaintiff and his mother did not discover, nor could they have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 12/7/18, which is less than two (2) years from the presentment of her administrative tort claim on 4/15/20. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

8.  As a direct and proximate result of the negligence, carelessness, and unskillfulness of the defendant, Jacqueline Papachriston, R.N., the minor plaintiff, Yadiel Isabel Pena, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for his medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and his ability to enjoy life has been permanently adversely affected.

WHEREFORE, the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, prays judgment against the defendant, Jacqueline Papachriston, R.N., in an amount which is just and appropriate to compensate him for his injuries, together with interest and costs.

## Count XIV.

1.  The minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, repeats and reavers fully herein Paragraphs One through Eight of Count XIII of this complaint as if each were set forth here in its entirety.

2.  The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3.  On or about 3/11/14, the defendant, Jacqueline Papachriston, R.N., contracted with the minor plaintiff's parents to provide professional services related to the minor plaintiff's and his mother's nursing care and treatment.

4.  The defendant, Jacqueline Papachriston, R.N., expressly and impliedly warranted to the minor plaintiff's parents that she would perform and render said professional services in accordance with accepted standards for the practice of nursing, and that she would possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the nursing profession practicing her specialty.

5.  On or about 3/11/14, the defendant, Jacqueline Papachriston, R.N., breached her express and implied warranties by failing to perform and render professional services in accordance with accepted standards for the practice of nursing, and by failing to possess and exercise that

degree of skill and care possessed and exercised by the average qualified members of the nursing profession practicing her specialty.

6. The minor plaintiff and his mother did not discover, nor could they have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 12/7/18, which is less than two (2) years from the presentment of her administrative tort claim on 4/15/20. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

7. As a direct and proximate result of the defendant, Jacqueline Papachriston, R.N.'s breach of express and implied warranties, the minor plaintiff, Yadiel Isabel Pena, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for his medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and his ability to enjoy life has been permanently adversely affected.

WHEREFORE, the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, prays judgment against the defendant, Jacqueline Papachriston, R.N., in an amount which is just and appropriate to compensate him for his injuries, together with interest and costs.

## Count XV.

1. The minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, repeats and reavers fully herein Paragraphs One through Eight of Count XIII and Paragraphs One through Seven of Count XIV of this complaint as if each were set forth here in its entirety.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. On or about 3/11/14, average qualified members of the nursing profession practicing the defendant's specialty knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the minor plaintiff and his mother.

4. On or about 3/11/14, the defendant, Jacqueline Papachriston, R.N., knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the minor plaintiff and his mother.

5. On or about 3/11/14, the defendant, Jacqueline Papachriston, R.N., did not inform the minor plaintiff's parents of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the minor plaintiff and his mother.

6. If the defendant, Jacqueline Papachriston, R.N., had informed the minor plaintiff's parents of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the minor plaintiff and his mother, neither the minor plaintiff's parents nor a reasonable person in their position would have elected the defendant's choice of treatment.

7. The alternatives to and the risks and potential consequences of the defendant's choice of treatment were material to a decision by the minor plaintiff's parents and a reasonable person in their position as to whether to undergo the defendant's choice of treatment.

8. The minor plaintiff and his mother did not discover, nor could they have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 12/7/18, which is less than two (2) years from the presentment of her administrative tort claim on 4/15/20. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

9. As a direct and proximate result of the defendant, Jacqueline Papachriston, R.N.'s failure to inform the minor plaintiff's parents of the alternatives to and risks and potential consequences of the defendant's treatment, the minor plaintiff, Yadiel Isabel Pena, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for his medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and his ability to enjoy life has been permanently adversely affected.

WHEREFORE, the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, prays judgment against the defendant, Jacqueline Papachriston, R.N., in an amount which is just and appropriate to compensate him for his injuries, together with interest and costs.

## Count XVI.

1. The plaintiff, Yacaira Pena, is the mother of Yadiel Isabel Pena, and the person responsible for his support and medical care and a resident of Waltham, Middlesex County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, Jacqueline Papachriston, R.N., was at all times relevant to this complaint a nurse licensed to practice in the Commonwealth of Massachusetts.

4. The plaintiff, Yacaira Pena, repeats and reavers fully herein the allegations contained in the aforementioned Counts pleaded by the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, against the defendant, Jacqueline Papachriston, R.N., in this complaint as if each were set forth here in its entirety.

5. As a direct and proximate result of the defendant, Jacqueline Papachriston, R.N.'s negligence, breach of warranties and failure to obtain informed consent, the plaintiff, Yacaira Pena, has incurred and will continue to incur great expense for the medical, surgical, and hospital care and treatment of Yadiel Isabel Pena, throughout the life of Yadiel Isabel Pena.

WHEREFORE, the plaintiff, Yacaira Pena, prays judgment against the defendant, Jacqueline Papachriston, R.N., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XVII.

1. The plaintiff, Yacaira Pena, is the mother of Yadiel Isabel Pena, and a resident of Waltham, Middlesex County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, Jacqueline Papachriston, R.N., was at all times relevant to this complaint a nurse licensed to practice in the Commonwealth of Massachusetts.

4. The plaintiff, Yacaira Pena, repeats and reavers fully herein the allegations contained in the aforementioned Counts pleaded by the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, against the defendant, Jacqueline Papachriston, R.N., in this complaint as if each were set forth here in its entirety.

5. As a direct and proximate result of the defendant, Jacqueline Papachriston, R.N.'s negligence, breach of warranties and failure to obtain informed consent, the plaintiff, Yacaira Pena, has suffered and will continue to suffer severe emotional distress resulting in substantial physical injury.

WHEREFORE, the plaintiff, Yacaira Pena, prays judgment against the defendant, Jacqueline Papachriston, R.N., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XVIII.

1. The plaintiff, Yacaira Pena, is the mother of Yadiel Isabel Pena, and a resident of Waltham, Middlesex County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, Jacqueline Papachriston, R.N., was at all times relevant to this complaint a nurse licensed to practice in the Commonwealth of Massachusetts.

4. The plaintiff, Yacaira Pena, repeats and reavers fully herein the allegations contained in the aforementioned Counts pleaded by the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, against the defendant, Jacqueline Papachriston, R.N., in this complaint as if each were set forth here in its entirety.

5. As the direct and proximate result of the negligence, breach of warranties, and failure to obtain informed consent of the defendant, Jacqueline Papachriston, R.N., the plaintiff, Yacaira Pena, has had severely restricted the benefit of the full services, society, and affection of Yadiel Isabel Pena.

WHEREFORE, the plaintiff, Yacaira Pena, prays judgment against the defendant, Jacqueline Papachriston, R.N., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XIX.

1. The plaintiff, Yadiel Isabel Pena, is a minor who brings this action through his Mother and next friend, Yacaira Pena, a resident of Waltham, Middlesex County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, Cheryl Britt, R.N., was at all times relevant to this complaint a nurse licensed to practice her profession in the Commonwealth of Massachusetts.

4. At all times relevant to this complaint, the defendant, Cheryl Britt, R.N., represented and held herself out to be a nurse, skilled in the treatment of various illnesses and conditions and, in particular, represented to the minor plaintiff's parents that she was knowledgeable, competent, and qualified to diagnose and treat the minor plaintiff and his mother on or about 3/11/14.

5. On or about 3/11/14, the minor plaintiff's mother submitted herself and the minor plaintiff to the care and treatment of the defendant, Cheryl Britt, R.N., who negligently, carelessly, and without regard for the minor plaintiff's and his mother's health and well being, treated the minor plaintiff and his mother in a manner resulting in the minor plaintiff's severe personal injuries.

6. The injuries sustained by the minor plaintiff, Yadiel Isabel Pena, were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by the defendant, Cheryl Britt, R.N., including, but not limited to the following:

   a. Defendant's misrepresentations to the minor plaintiff's parents that she was knowledgeable, skillful, and competent to diagnose and treat the minor plaintiff and his mother on or about 3/11/14;

   b. Defendant's failure to adequately and properly diagnose the minor plaintiff's and his mother's medical condition on or about 3/11/14, and her failure to prescribe proper and timely treatment for said condition;

   c. Defendant's failure to recognize, or have the knowledge to recognize her inability and lack of skill to diagnose and treat the minor plaintiff and his mother, when the defendant knew or should have known in the exercise of due care, the foreseeable consequences of her inability and failure to properly and skillfully provide the minor plaintiff and his mother with acceptable nursing services;

   d. Defendant's failure to possess or negligent failure to exercise that degree of skill, training, and care as is possessed and exercised by average qualified members of the nursing profession practicing her specialty; and

   e. Defendant's failure to inform and to warn of the risks involved in or associated with the minor plaintiff's and his mother's condition and failure to inform and to warn about the treatment of said condition.

7. The minor plaintiff and his mother did not discover, nor could they have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 12/7/18, which is less than two (2) years from the presentment of her administrative tort claim on 4/15/20. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

8. As a direct and proximate result of the negligence, carelessness, and unskillfulness of the defendant, Cheryl Britt, R.N., the minor plaintiff, Yadiel Isabel Pena, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for his medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and his ability to enjoy life has been permanently adversely affected.

WHEREFORE, the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, prays judgment against the defendant, Cheryl Britt, R.N., in an amount which is just and appropriate to compensate him for his injuries, together with interest and costs.

## Count XX.

1. The minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, repeats and reavers fully herein Paragraphs One through Eight of Count XIX of this complaint as if each were set forth here in its entirety.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. On or about 3/11/14, the defendant, Cheryl Britt, R.N., contracted with the minor plaintiff's parents to provide professional services related to the minor plaintiff's and his mother's nursing care and treatment.

4. The defendant, Cheryl Britt, R.N., expressly and impliedly warranted to the minor plaintiff's parents that she would perform and render said professional services in accordance with accepted standards for the practice of nursing, and that she would possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the nursing profession practicing her specialty.

5. On or about 3/11/14, the defendant, Cheryl Britt, R.N., breached her express and implied warranties by failing to perform and render professional services in accordance with accepted standards for the practice of nursing, and by failing to possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the nursing profession practicing her specialty.

6. The minor plaintiff and his mother did not discover, nor could they have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 12/7/18, which is less than two (2) years from the presentment of her administrative tort claim on 4/15/20. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

7. As a direct and proximate result of the defendant, Cheryl Britt, R.N.'s breach of express and implied warranties, the minor plaintiff, Yadiel Isabel Pena, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for his medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and his ability to enjoy life has been permanently adversely affected.

WHEREFORE, the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, prays judgment against the defendant, Cheryl Britt, R.N., in an amount which is just and appropriate to compensate him for his injuries, together with interest and costs.

## Count XXI.

1. The minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, repeats and reavers fully herein Paragraphs One through Eight of Count XIX and Paragraphs One through Seven of Count XX of this complaint as if each were set forth here in its entirety.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. On or about 3/11/14, average qualified members of the nursing profession practicing the defendant's specialty knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the minor plaintiff and his mother.

4. On or about 3/11/14, the defendant, Cheryl Britt, R.N., knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the minor plaintiff and his mother.

5. On or about 3/11/14, the defendant, Cheryl Britt, R.N., did not inform the minor plaintiff's parents of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the minor plaintiff and his mother.

6. If the defendant, Cheryl Britt, R.N., had informed the minor plaintiff's parents of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the minor plaintiff and his mother, neither the minor plaintiff's parents nor a reasonable person in their position would have elected the defendant's choice of treatment.

7. The alternatives to and the risks and potential consequences of the defendant's choice of treatment were material to a decision by the minor plaintiff's parents and a reasonable person in their position as to whether to undergo the defendant's choice of treatment.

8. The minor plaintiff and his mother did not discover, nor could they have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 12/7/18, which is less than two (2) years from the presentment of her administrative tort claim on 4/15/20. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

9. As a direct and proximate result of the defendant, Cheryl Britt, R.N.'s failure to inform the minor plaintiff's parents of the alternatives to and risks and potential consequences of the defendant's treatment, the minor plaintiff, Yadiel Isabel Pena, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for his medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and his ability to enjoy life has been permanently adversely affected.

WHEREFORE, the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, prays judgment against the defendant, Cheryl Britt, R.N., in an amount which is just and appropriate to compensate him for his injuries, together with interest and costs.

## Count XXII.

1. The plaintiff, Yacaira Pena, is the mother of Yadiel Isabel Pena, and the person responsible for his support and medical care and a resident of Waltham, Middlesex County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, Cheryl Britt, R.N., was at all times relevant to this complaint a nurse licensed to practice in the Commonwealth of Massachusetts.

4. The plaintiff, Yacaira Pena, repeats and reavers fully herein the allegations contained in the aforementioned Counts pleaded by the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, against the defendant, Cheryl Britt, R.N., in this complaint as if each were set forth here in its entirety.

5. As a direct and proximate result of the defendant, Cheryl Britt, R.N.'s negligence, breach of warranties and failure to obtain informed consent, the plaintiff, Yacaira Pena, has incurred and will continue to incur great expense for the medical, surgical, and hospital care and treatment of Yadiel Isabel Pena, throughout the life of Yadiel Isabel Pena.

WHEREFORE, the plaintiff, Yacaira Pena, prays judgment against the defendant, Cheryl Britt, R.N., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XXIII.

1. The plaintiff, Yacaira Pena, is the mother of Yadiel Isabel Pena, and a resident of Waltham, Middlesex County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, Cheryl Britt, R.N., was at all times relevant to this complaint a nurse licensed to practice in the Commonwealth of Massachusetts.

4. The plaintiff, Yacaira Pena, repeats and reavers fully herein the allegations contained in the aforementioned Counts pleaded by the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, against the defendant, Cheryl Britt, R.N., in this complaint as if each were set forth here in its entirety.

5. As a direct and proximate result of the defendant, Cheryl Britt, R.N.'s negligence, breach of warranties and failure to obtain informed consent, the plaintiff, Yacaira Pena, has suffered and will continue to suffer severe emotional distress resulting in substantial physical injury.

WHEREFORE, the plaintiff, Yacaira Pena, prays judgment against the defendant, Cheryl Britt, R.N., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XXIV.

1. The plaintiff, Yacaira Pena, is the mother of Yadiel Isabel Pena, and a resident of Waltham, Middlesex County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, Cheryl Britt, R.N., was at all times relevant to this complaint a nurse licensed to practice in the Commonwealth of Massachusetts.

4. The plaintiff, Yacaira Pena, repeats and reavers fully herein the allegations contained in the aforementioned Counts pleaded by the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, against the defendant, Cheryl Britt, R.N., in this complaint as if each were set forth here in its entirety.

5. As the direct and proximate result of the negligence, breach of warranties, and failure to obtain informed consent of the defendant, Cheryl Britt, R.N., the plaintiff, Yacaira Pena, has had severely restricted the benefit of the full services, society, and affection of Yadiel Isabel Pena.

WHEREFORE, the plaintiff, Yacaira Pena, prays judgment against the defendant, Cheryl Britt, R.N., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XXV.

1. The plaintiff, Yadiel Isabel Pena, is a minor who brings this action through his Mother and next friend, Yacaira Pena, a resident of Waltham, Middlesex County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, Jennifer Farmer, R.N., was at all times relevant to this complaint a nurse licensed to practice her profession in the Commonwealth of Massachusetts.

4. At all times relevant to this complaint, the defendant, Jennifer Farmer, R.N., represented and held herself out to be a nurse, skilled in the treatment of various illnesses and conditions and, in particular, represented to the minor plaintiff's parents that she was knowledgeable, competent, and qualified to diagnose and treat the minor plaintiff and his mother on or about 3/11/14.

5. On or about 3/11/14, the minor plaintiff's mother submitted herself and the minor plaintiff to the care and treatment of the defendant, Jennifer Farmer, R.N., who negligently, carelessly, and without regard for the minor plaintiff's and his mother's health and well being, treated the minor plaintiff and his mother in a manner resulting in the minor plaintiff's severe personal injuries.

6. The injuries sustained by the minor plaintiff, Yadiel Isabel Pena, were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by the defendant, Jennifer Farmer, R.N., including, but not limited to the following:

   a. Defendant's misrepresentations to the minor plaintiff's parents that she was knowledgeable, skillful, and competent to diagnose and treat the minor plaintiff and his mother on or about 3/11/14;

   b. Defendant's failure to adequately and properly diagnose the minor plaintiff's and his mother's medical condition on or about 3/11/14, and her failure to prescribe proper and timely treatment for said condition;

   c. Defendant's failure to recognize, or have the knowledge to recognize her inability and lack of skill to diagnose and treat the minor plaintiff and his mother, when the defendant knew or should have known in the exercise of due care, the foreseeable consequences of her inability and failure to properly and skillfully provide the minor plaintiff and his mother with acceptable nursing services;

   d. Defendant's failure to possess or negligent failure to exercise that degree of skill, training, and care as is possessed and exercised by average qualified members of the nursing profession practicing her specialty; and

   e. Defendant's failure to inform and to warn of the risks involved in or associated with the minor plaintiff's and his mother's condition and failure to inform and to warn about the treatment of said condition.

7. The minor plaintiff and his mother did not discover, nor could they have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 12/7/18, which is less than two (2) years from the presentment of her administrative tort claim on 4/15/20. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

8. As a direct and proximate result of the negligence, carelessness, and unskillfulness of the defendant, Jennifer Farmer, R.N., the minor plaintiff, Yadiel Isabel Pena, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for his medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and his ability to enjoy life has been permanently adversely affected.

WHEREFORE, the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, prays judgment against the defendant, Jennifer Farmer, R.N., in an amount which is just and appropriate to compensate him for his injuries, together with interest and costs.

## Count XXVI.

1. The minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, repeats and reavers fully herein Paragraphs One through Eight of Count XXV of this complaint as if each were set forth here in its entirety.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. On or about 3/11/14, the defendant, Jennifer Farmer, R.N., contracted with the minor plaintiff's parents to provide professional services related to the minor plaintiff's and his mother's nursing care and treatment.

4. The defendant, Jennifer Farmer, R.N., expressly and impliedly warranted to the minor plaintiff's parents that she would perform and render said professional services in accordance with accepted standards for the practice of nursing, and that she would possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the nursing profession practicing her specialty.

5. On or about 3/11/14, the defendant, Jennifer Farmer, R.N., breached her express and implied warranties by failing to perform and render professional services in accordance with accepted standards for the practice of nursing, and by failing to possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the nursing profession practicing her specialty.

6. The minor plaintiff and his mother did not discover, nor could they have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 12/7/18, which is less than two (2) years from the presentment of her administrative tort claim on 4/15/20. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

7. As a direct and proximate result of the defendant, Jennifer Farmer, R.N.'s breach of express and implied warranties, the minor plaintiff, Yadiel Isabel Pena, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for his medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has

been and will continue to be unable to pursue normal activities; and his ability to enjoy life has been permanently adversely affected.

WHEREFORE, the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, prays judgment against the defendant, Jennifer Farmer, R.N., in an amount which is just and appropriate to compensate him for his injuries, together with interest and costs.

## Count XXVII.

1. The minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, repeats and reavers fully herein Paragraphs One through Eight of Count XXV and Paragraphs One through Seven of Count XXVI of this complaint as if each were set forth here in its entirety.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. On or about 3/11/14, average qualified members of the nursing profession practicing the defendant's specialty knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the minor plaintiff and his mother.

4. On or about 3/11/14, the defendant, Jennifer Farmer, R.N., knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the minor plaintiff and his mother.

5. On or about 3/11/14, the defendant, Jennifer Farmer, R.N., did not inform the minor plaintiff's parents of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the minor plaintiff and his mother.

6. If the defendant, Jennifer Farmer, R.N., had informed the minor plaintiff's parents of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the minor plaintiff and his mother, neither the minor plaintiff's parents nor a reasonable person in their position would have elected the defendant's choice of treatment.

7. The alternatives to and the risks and potential consequences of the defendant's choice of treatment were material to a decision by the minor plaintiff's parents and a reasonable person in their position as to whether to undergo the defendant's choice of treatment.

8. The minor plaintiff and his mother did not discover, nor could they have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 12/7/18, which is less than two (2) years from the presentment of her administrative tort claim on 4/15/20. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

9. As a direct and proximate result of the defendant, Jennifer Farmer, R.N.'s failure to inform the minor plaintiff's parents of the alternatives to and risks and potential consequences of the defendant's treatment, the minor plaintiff, Yadiel Isabel Pena, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for his

medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and his ability to enjoy life has been permanently adversely affected.

WHEREFORE, the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, prays judgment against the defendant, Jennifer Farmer, R.N., in an amount which is just and appropriate to compensate him for his injuries, together with interest and costs.

## Count XXVIII.

1. The plaintiff, Yacaira Pena, is the mother of Yadiel Isabel Pena, and the person responsible for his support and medical care and a resident of Waltham, Middlesex County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, Jennifer Farmer, R.N., was at all times relevant to this complaint a nurse licensed to practice in the Commonwealth of Massachusetts.

4. The plaintiff, Yacaira Pena, repeats and reavers fully herein the allegations contained in the aforementioned Counts pleaded by the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, against the defendant, Jennifer Farmer, R.N., in this complaint as if each were set forth here in its entirety.

5. As a direct and proximate result of the defendant, Jennifer Farmer, R.N.'s negligence, breach of warranties and failure to obtain informed consent, the plaintiff, Yacaira Pena, has incurred and will continue to incur great expense for the medical, surgical, and hospital care and treatment of Yadiel Isabel Pena, throughout the life of Yadiel Isabel Pena.

WHEREFORE, the plaintiff, Yacaira Pena, prays judgment against the defendant, Jennifer Farmer, R.N., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XXIX.

1. The plaintiff, Yacaira Pena, is the mother of Yadiel Isabel Pena, and a resident of Waltham, Middlesex County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, Jennifer Farmer, R.N., was at all times relevant to this complaint a nurse licensed to practice in the Commonwealth of Massachusetts.

4. The plaintiff, Yacaira Pena, repeats and reavers fully herein the allegations contained in the aforementioned Counts pleaded by the minor plaintiff, Yadiel Isabel Pena, through his Mother

and next friend, Yacaira Pena, against the defendant, Jennifer Farmer, R.N., in this complaint as if each were set forth here in its entirety.

5. As a direct and proximate result of the defendant, Jennifer Farmer, R.N.'s negligence, breach of warranties and failure to obtain informed consent, the plaintiff, Yacaira Pena, has suffered and will continue to suffer severe emotional distress resulting in substantial physical injury.

WHEREFORE, the plaintiff, Yacaira Pena, prays judgment against the defendant, Jennifer Farmer, R.N., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XXX.

1. The plaintiff, Yacaira Pena, is the mother of Yadiel Isabel Pena, and a resident of Waltham, Middlesex County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, Jennifer Farmer, R.N., was at all times relevant to this complaint a nurse licensed to practice in the Commonwealth of Massachusetts.

4. The plaintiff, Yacaira Pena, repeats and reavers fully herein the allegations contained in the aforementioned Counts pleaded by the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, against the defendant, Jennifer Farmer, R.N., in this complaint as if each were set forth here in its entirety.

5. As the direct and proximate result of the negligence, breach of warranties, and failure to obtain informed consent of the defendant, Jennifer Farmer, R.N., the plaintiff, Yacaira Pena, has had severely restricted the benefit of the full services, society, and affection of Yadiel Isabel Pena.

WHEREFORE, the plaintiff, Yacaira Pena, prays judgment against the defendant, Jennifer Farmer, R.N., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XXXI.

1. The plaintiff, Yadiel Isabel Pena, is a minor who brings this action through his Mother and next friend, Yacaira Pena, a resident of Waltham, Middlesex County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, Patricia Lane, R.N., was at all times relevant to this complaint a nurse licensed to practice her profession in the Commonwealth of Massachusetts.

4. At all times relevant to this complaint, the defendant, Patricia Lane, R.N., represented and held herself out to be a nurse, skilled in the treatment of various illnesses and conditions and,

in particular, represented to the minor plaintiff's parents that she was knowledgeable, competent, and qualified to diagnose and treat the minor plaintiff and his mother on or about 3/11/14 - 3/12/14.

5. On or about 3/11/14 - 3/12/14, the minor plaintiff's mother submitted herself and the minor plaintiff to the care and treatment of the defendant, Patricia Lane, R.N., who negligently, carelessly, and without regard for the minor plaintiff's and his mother's health and well being, treated the minor plaintiff and his mother in a manner resulting in the minor plaintiff's severe personal injuries.

6. The injuries sustained by the minor plaintiff, Yadiel Isabel Pena, were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by the defendant, Patricia Lane, R.N., including, but not limited to the following:

   a. Defendant's misrepresentations to the minor plaintiff's parents that she was knowledgeable, skillful, and competent to diagnose and treat the minor plaintiff and his mother on or about 3/11/14 - 3/12/14;

   b. Defendant's failure to adequately and properly diagnose the minor plaintiff's and his mother's medical condition on or about 3/11/14 - 3/12/14, and her failure to prescribe proper and timely treatment for said condition;

   c. Defendant's failure to recognize, or have the knowledge to recognize her inability and lack of skill to diagnose and treat the minor plaintiff and his mother, when the defendant knew or should have known in the exercise of due care, the foreseeable consequences of her inability and failure to properly and skillfully provide the minor plaintiff and his mother with acceptable nursing services;

   d. Defendant's failure to possess or negligent failure to exercise that degree of skill, training, and care as is possessed and exercised by average qualified members of the nursing profession practicing her specialty; and

   e. Defendant's failure to inform and to warn of the risks involved in or associated with the minor plaintiff's and his mother's condition and failure to inform and to warn about the treatment of said condition.

7. The minor plaintiff and his mother did not discover, nor could they have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 12/7/18, which is less than two (2) years from the presentment of her administrative tort claim on 4/15/20. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

8. As a direct and proximate result of the negligence, carelessness, and unskillfulness of the defendant, Patricia Lane, R.N., the minor plaintiff, Yadiel Isabel Pena, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for his medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized;

has been and will continue to be unable to pursue normal activities; and his ability to enjoy life has been permanently adversely affected.

WHEREFORE, the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, prays judgment against the defendant, Patricia Lane, R.N., in an amount which is just and appropriate to compensate him for his injuries, together with interest and costs.

## Count XXXII.

1. The minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, repeats and reavers fully herein Paragraphs One through Eight of Count XXXI of this complaint as if each were set forth here in its entirety.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. On or about 3/11/14 - 3/12/14, the defendant, Patricia Lane, R.N., contracted with the minor plaintiff's parents to provide professional services related to the minor plaintiff's and his mother's nursing care and treatment.

4. The defendant, Patricia Lane, R.N., expressly and impliedly warranted to the minor plaintiff's parents that she would perform and render said professional services in accordance with accepted standards for the practice of nursing, and that she would possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the nursing profession practicing her specialty.

5. On or about 3/11/14 - 3/12/14, the defendant, Patricia Lane, R.N., breached her express and implied warranties by failing to perform and render professional services in accordance with accepted standards for the practice of nursing, and by failing to possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the nursing profession practicing her specialty.

6. The minor plaintiff and his mother did not discover, nor could they have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 12/7/18, which is less than two (2) years from the presentment of her administrative tort claim on 4/15/20. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

7. As a direct and proximate result of the defendant, Patricia Lane, R.N.'s breach of express and implied warranties, the minor plaintiff, Yadiel Isabel Pena, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for his medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and his ability to enjoy life has been permanently adversely affected.

WHEREFORE, the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, prays judgment against the defendant, Patricia Lane, R.N., in an amount which is just and appropriate to compensate him for his injuries, together with interest and costs.

## Count XXXIII.

1. The minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, repeats and reavers fully herein Paragraphs One through Eight of Count XXXI and Paragraphs One through Seven of Count XXXII of this complaint as if each were set forth here in its entirety.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. On or about 3/11/14 - 3/12/14, average qualified members of the nursing profession practicing the defendant's specialty knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the minor plaintiff and his mother.

4. On or about 3/11/14 - 3/12/14, the defendant, Patricia Lane, R.N., knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the minor plaintiff and his mother.

5. On or about 3/11/14 - 3/12/14, the defendant, Patricia Lane, R.N., did not inform the minor plaintiff's parents of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the minor plaintiff and his mother.

6. If the defendant, Patricia Lane, R.N., had informed the minor plaintiff's parents of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the minor plaintiff and his mother, neither the minor plaintiff's parents nor a reasonable person in their position would have elected the defendant's choice of treatment.

7. The alternatives to and the risks and potential consequences of the defendant's choice of treatment were material to a decision by the minor plaintiff's parents and a reasonable person in their position as to whether to undergo the defendant's choice of treatment.

8. The minor plaintiff and his mother did not discover, nor could they have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 12/7/18, which is less than two (2) years from the presentment of her administrative tort claim on 4/15/20. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

9. As a direct and proximate result of the defendant, Patricia Lane, R.N.'s failure to inform the minor plaintiff's parents of the alternatives to and risks and potential consequences of the defendant's treatment, the minor plaintiff, Yadiel Isabel Pena, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for his medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has

been and will continue to be unable to pursue normal activities; and his ability to enjoy life has been permanently adversely affected.

WHEREFORE, the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, prays judgment against the defendant, Patricia Lane, R.N., in an amount which is just and appropriate to compensate him for his injuries, together with interest and costs.

## Count XXXIV.

1. The plaintiff, Yacaira Pena, is the mother of Yadiel Isabel Pena, and the person responsible for his support and medical care and a resident of Waltham, Middlesex County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, Patricia Lane, R.N., was at all times relevant to this complaint a nurse licensed to practice in the Commonwealth of Massachusetts.

4. The plaintiff, Yacaira Pena, repeats and reavers fully herein the allegations contained in the aforementioned Counts pleaded by the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, against the defendant, Patricia Lane, R.N., in this complaint as if each were set forth here in its entirety.

5. As a direct and proximate result of the defendant, Patricia Lane, R.N.'s negligence, breach of warranties and failure to obtain informed consent, the plaintiff, Yacaira Pena, has incurred and will continue to incur great expense for the medical, surgical, and hospital care and treatment of Yadiel Isabel Pena, throughout the life of Yadiel Isabel Pena.

WHEREFORE, the plaintiff, Yacaira Pena, prays judgment against the defendant, Patricia Lane, R.N., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XXXV.

1. The plaintiff, Yacaira Pena, is the mother of Yadiel Isabel Pena, and a resident of Waltham, Middlesex County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, Patricia Lane, R.N., was at all times relevant to this complaint a nurse licensed to practice in the Commonwealth of Massachusetts.

4. The plaintiff, Yacaira Pena, repeats and reavers fully herein the allegations contained in the aforementioned Counts pleaded by the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, against the defendant, Patricia Lane, R.N., in this complaint as if each were set forth here in its entirety.

5. As a direct and proximate result of the defendant, Patricia Lane, R.N.'s negligence, breach of warranties and failure to obtain informed consent, the plaintiff, Yacaira Pena, has suffered and will continue to suffer severe emotional distress resulting in substantial physical injury.

WHEREFORE, the plaintiff, Yacaira Pena, prays judgment against the defendant, Patricia Lane, R.N., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XXXVI.

1. The plaintiff, Yacaira Pena, is the mother of Yadiel Isabel Pena, and a resident of Waltham, Middlesex County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, Patricia Lane, R.N., was at all times relevant to this complaint a nurse licensed to practice in the Commonwealth of Massachusetts.

4. The plaintiff, Yacaira Pena, repeats and reavers fully herein the allegations contained in the aforementioned Counts pleaded by the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, against the defendant, Patricia Lane, R.N., in this complaint as if each were set forth here in its entirety.

5. As the direct and proximate result of the negligence, breach of warranties, and failure to obtain informed consent of the defendant, Patricia Lane, R.N., the plaintiff, Yacaira Pena, has had severely restricted the benefit of the full services, society, and affection of Yadiel Isabel Pena.

WHEREFORE, the plaintiff, Yacaira Pena, prays judgment against the defendant, Patricia Lane, R.N., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XXXVII.

1. The plaintiff, Yadiel Isabel Pena, is a minor who brings this action through his Mother and next friend, Yacaira Pena, a resident of Waltham, Middlesex County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, Dawn Bellorado, R.N., was at all times relevant to this complaint a nurse licensed to practice her profession in the Commonwealth of Massachusetts.

4. At all times relevant to this complaint, the defendant, Dawn Bellorado, R.N., represented and held herself out to be a nurse, skilled in the treatment of various illnesses and conditions and, in particular, represented to the minor plaintiff's parents that she was knowledgeable, competent, and qualified to diagnose and treat the minor plaintiff and his mother on or about 3/12/14.

5. On or about 3/12/14, the minor plaintiff's mother submitted herself and the minor plaintiff to the care and treatment of the defendant, Dawn Bellorado, R.N., who negligently, carelessly, and without regard for the minor plaintiff's and his mother's health and well being, treated the minor plaintiff and his mother in a manner resulting in the minor plaintiff's severe personal injuries.

6. The injuries sustained by the minor plaintiff, Yadiel Isabel Pena, were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by the defendant, Dawn Bellorado, R.N., including, but not limited to the following:

   a. Defendant's misrepresentations to the minor plaintiff's parents that she was knowledgeable, skillful, and competent to diagnose and treat the minor plaintiff and his mother on or about 3/12/14;

   b. Defendant's failure to adequately and properly diagnose the minor plaintiff's and his mother's medical condition on or about 3/12/14, and her failure to prescribe proper and timely treatment for said condition;

   c. Defendant's failure to recognize, or have the knowledge to recognize her inability and lack of skill to diagnose and treat the minor plaintiff and his mother, when the defendant knew or should have known in the exercise of due care, the foreseeable consequences of her inability and failure to properly and skillfully provide the minor plaintiff and his mother with acceptable nursing services;

   d. Defendant's failure to possess or negligent failure to exercise that degree of skill, training, and care as is possessed and exercised by average qualified members of the nursing profession practicing her specialty; and

   e. Defendant's failure to inform and to warn of the risks involved in or associated with the minor plaintiff's and his mother's condition and failure to inform and to warn about the treatment of said condition.

7. The minor plaintiff and his mother did not discover, nor could they have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 12/7/18, which is less than two (2) years from the presentment of her administrative tort claim on 4/15/20. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

8. As a direct and proximate result of the negligence, carelessness, and unskillfulness of the defendant, Dawn Bellorado, R.N., the minor plaintiff, Yadiel Isabel Pena, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for his medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and his ability to enjoy life has been permanently adversely affected.

WHEREFORE, the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, prays judgment against the defendant, Dawn Bellorado, R.N., in an amount which is just and appropriate to compensate him for his injuries, together with interest and costs.

## Count XXXVIII.

1. The minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, repeats and reavers fully herein Paragraphs One through Eight of Count XXXVII of this complaint as if each were set forth here in its entirety.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. On or about 3/12/14, the defendant, Dawn Bellorado, R.N., contracted with the minor plaintiff's parents to provide professional services related to the minor plaintiff's and his mother's nursing care and treatment.

4. The defendant, Dawn Bellorado, R.N., expressly and impliedly warranted to the minor plaintiff's parents that she would perform and render said professional services in accordance with accepted standards for the practice of nursing, and that she would possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the nursing profession practicing her specialty.

5. On or about 3/12/14, the defendant, Dawn Bellorado, R.N., breached her express and implied warranties by failing to perform and render professional services in accordance with accepted standards for the practice of nursing, and by failing to possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the nursing profession practicing her specialty.

6. The minor plaintiff and his mother did not discover, nor could they have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 12/7/18, which is less than two (2) years from the presentment of her administrative tort claim on 4/15/20. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

7. As a direct and proximate result of the defendant, Dawn Bellorado, R.N.'s breach of express and implied warranties, the minor plaintiff, Yadiel Isabel Pena, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for his medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and his ability to enjoy life has been permanently adversely affected.

WHEREFORE, the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, prays judgment against the defendant, Dawn Bellorado, R.N., in an amount which is just and appropriate to compensate him for his injuries, together with interest and costs.

## Count XXXIX.

1. The minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, repeats and reavers fully herein Paragraphs One through Eight of Count XXXVII and Paragraphs One through Seven of Count XXXVIII of this complaint as if each were set forth here in its entirety.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. On or about 3/12/14, average qualified members of the nursing profession practicing the defendant's specialty knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the minor plaintiff and his mother.

4. On or about 3/12/14, the defendant, Dawn Bellorado, R.N., knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the minor plaintiff and his mother.

5. On or about 3/12/14, the defendant, Dawn Bellorado, R.N., did not inform the minor plaintiff's parents of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the minor plaintiff and his mother.

6. If the defendant, Dawn Bellorado, R.N., had informed the minor plaintiff's parents of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the minor plaintiff and his mother, neither the minor plaintiff's parents nor a reasonable person in their position would have elected the defendant's choice of treatment.

7. The alternatives to and the risks and potential consequences of the defendant's choice of treatment were material to a decision by the minor plaintiff's parents and a reasonable person in their position as to whether to undergo the defendant's choice of treatment.

8. The minor plaintiff and his mother did not discover, nor could they have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 12/7/18, which is less than two (2) years from the presentment of her administrative tort claim on 4/15/20. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

9. As a direct and proximate result of the defendant, Dawn Bellorado, R.N.'s failure to inform the minor plaintiff's parents of the alternatives to and risks and potential consequences of the defendant's treatment, the minor plaintiff, Yadiel Isabel Pena, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for his medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and his ability to enjoy life has been permanently adversely affected.

WHEREFORE, the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, prays judgment against the defendant, Dawn Bellorado, R.N., in an amount which is just and appropriate to compensate him for his injuries, together with interest and costs.

## Count XL.

1. The plaintiff, Yacaira Pena, is the mother of Yadiel Isabel Pena, and the person responsible for his support and medical care and a resident of Waltham, Middlesex County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, Dawn Bellorado, R.N., was at all times relevant to this complaint a nurse licensed to practice in the Commonwealth of Massachusetts.

4. The plaintiff, Yacaira Pena, repeats and reavers fully herein the allegations contained in the aforementioned Counts pleaded by the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, against the defendant, Dawn Bellorado, R.N., in this complaint as if each were set forth here in its entirety.

5. As a direct and proximate result of the defendant, Dawn Bellorado, R.N.'s negligence, breach of warranties and failure to obtain informed consent, the plaintiff, Yacaira Pena, has incurred and will continue to incur great expense for the medical, surgical, and hospital care and treatment of Yadiel Isabel Pena, throughout the life of Yadiel Isabel Pena.

WHEREFORE, the plaintiff, Yacaira Pena, prays judgment against the defendant, Dawn Bellorado, R.N., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XLI.

1. The plaintiff, Yacaira Pena, is the mother of Yadiel Isabel Pena, and a resident of Waltham, Middlesex County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, Dawn Bellorado, R.N., was at all times relevant to this complaint a nurse licensed to practice in the Commonwealth of Massachusetts.

4. The plaintiff, Yacaira Pena, repeats and reavers fully herein the allegations contained in the aforementioned Counts pleaded by the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, against the defendant, Dawn Bellorado, R.N., in this complaint as if each were set forth here in its entirety.

5. As a direct and proximate result of the defendant, Dawn Bellorado, R.N.'s negligence, breach of warranties and failure to obtain informed consent, the plaintiff, Yacaira Pena, has suffered and will continue to suffer severe emotional distress resulting in substantial physical injury.

WHEREFORE, the plaintiff, Yacaira Pena, prays judgment against the defendant, Dawn Bellorado, R.N., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XLII.

1. The plaintiff, Yacaira Pena, is the mother of Yadiel Isabel Pena, and a resident of Waltham, Middlesex County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, Dawn Bellorado, R.N., was at all times relevant to this complaint a nurse licensed to practice in the Commonwealth of Massachusetts.

4. The plaintiff, Yacaira Pena, repeats and reavers fully herein the allegations contained in the aforementioned Counts pleaded by the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, against the defendant, Dawn Bellorado, R.N., in this complaint as if each were set forth here in its entirety.

5. As the direct and proximate result of the negligence, breach of warranties, and failure to obtain informed consent of the defendant, Dawn Bellorado, R.N., the plaintiff, Yacaira Pena, has had severely restricted the benefit of the full services, society, and affection of Yadiel Isabel Pena.

WHEREFORE, the plaintiff, Yacaira Pena, prays judgment against the defendant, Dawn Bellorado, R.N., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XLIII.

1. The plaintiff, Yadiel Isabel Pena, is a minor who brings this action through his Mother and next friend, Yacaira Pena, a resident of Waltham, Middlesex County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts and the allegations set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, the United States of America, is a public employer within the meaning of 28 U.S.C. §1346(b) and 2671 et seq. and at all times herein Jennifer Bentwood, M.D. and Catherine Mygatt, M.D. were employees of Greater Lawrence Family Health Center which the Department of Health and Human Services has deemed eligible for protection under the Federal Tort Claims Act pursuant to 42 U.S.C. §233.

4. Jurisdiction is based on 28 U.S.C. § 1346(b), the Federal Tort Claims Act.

5. The minor plaintiff and his mother did not discover, nor could they have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 12/7/18, which is less than two (2) years from the presentment of her administrative tort claim on 4/15/20. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

6. At all times relevant to this complaint, the defendant, United States of America, by its agents, servants, or employees, represented and held itself out to be skilled in the treatment of various illnesses and conditions and, in particular, represented to the minor plaintiff's parents that it was knowledgeable, competent, and qualified to diagnose and treat the minor plaintiff and his mother on or about 3/11/14 - 3/12/14.

7. On or about 3/11/14 - 3/12/14, the minor plaintiff's mother submitted herself and the minor plaintiff to the care and treatment of the defendant, United States of America, by its agents, servants, or employees, who negligently, carelessly, and without regard for the minor plaintiff's and his mother's health and well being, treated the minor plaintiff and his mother in a manner resulting in the minor plaintiff's severe personal injuries.

8. The injuries sustained by the minor plaintiff, Yadiel Isabel Pena, were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by the defendant, United States of America, by its agents, servants, or employees, including, but not limited to the following:

   a. Defendant's misrepresentations to the minor plaintiff's parents that it was knowledgeable, skillful, and competent to diagnose and treat the minor plaintiff and his mother on or about 3/11/14 - 3/12/14;

   b. Defendant's failure to adequately and properly diagnose the minor plaintiff's and his mother's medical condition on or about 3/11/14 - 3/12/14, and its failure to prescribe proper and timely treatment for said condition;

   c. Defendant's failure to recognize, or have the knowledge to recognize its inability and lack of skill to diagnose and treat the minor plaintiff and his mother, when the defendant knew or should have known in the exercise of due care, the foreseeable consequences of its inability and failure to properly and skillfully provide the minor plaintiff and his mother with acceptable medical and diagnostic services;

   d. Defendant's failure to possess or negligent failure to exercise that degree of skill, training, and care as is possessed and exercised by average qualified members of the medical profession practicing its specialty;

   e. Defendant's failure to inform and to warn of the risks involved in or associated with the minor plaintiff's and his mother's condition and failure to inform and to warn about the treatment of said condition; and

     f.   Defendant's failure to exercise reasonable care in hiring, supervising, employing and/or continuing to employ its agents, servants, or employees.

9. As a direct and proximate result of the negligence, carelessness, and unskillfulness of the defendant, United States of America, by its agents, servants, or employees, the minor plaintiff, Yadiel Isabel Pena, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for his medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and his ability to enjoy life has been permanently adversely affected.

WHEREFORE, the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, prays judgment against the defendant, United States of America, in an amount which is just and appropriate to compensate him for his injuries, together with interest and costs.

## Count XLIV.

1. The minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, repeats and reavers fully herein Paragraphs One through Nine of Count XLIII of this complaint as if each were set forth here in its entirety.

2. The plaintiff repeats and reavers fully herein the facts and the allegations set forth in this Complaint as if each were set forth here in its entirety.

3. On or about 3/11/14 - 3/12/14, the defendant, United States of America, by its agents, servants, or employees, contracted with the minor plaintiff's parents to provide professional services related to the minor plaintiff's and his mother's medical care and treatment.

4. The defendant, United States of America, by its agents, servants, or employees, expressly and impliedly warranted to the minor plaintiff's parents that it would perform and render said professional services in accordance with accepted standards for the practice of medicine, and that it would possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing its specialty.

5. On or about 3/11/14 - 3/12/14, the defendant, United States of America, by its agents, servants, or employees, breached its express and implied warranties by failing to perform and render professional services in accordance with accepted standards for the practice of medicine, and by failing to possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing its specialty.

6. The minor plaintiff and his mother did not discover, nor could they have reasonably discovered in the exercise of reasonable diligence, the defendant's malpractice until after 12/7/18, which is less than two (2) years from the presentment of her administrative tort claim on 4/15/20. All conditions precedent to filing this Complaint including, but not limited to, exhaustion of administrative remedies under the Federal Tort Claims act have been satisfied.

7. As a direct and proximate result of the defendant, United States of America, by its agents', servants', or employees' breach of express and implied warranties, the minor plaintiff, Yadiel

Isabel Pena, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for his medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and his ability to enjoy life has been permanently adversely affected.

WHEREFORE, the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, prays judgment against the defendant, United States of America, in an amount which is just and appropriate to compensate him for his injuries, together with interest and costs.

## Count XLV.

1. The minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, repeats and reavers fully herein Paragraphs One through Nine of Count XLIII and Paragraphs One through Seven of Count XLIV of this complaint as if each were set forth here in its entirety.

2. The plaintiff repeats and reavers fully herein the facts and the allegations set forth in this Complaint as if each were set forth here in its entirety.

3. On or about 3/11/14 - 3/12/14, average qualified members of the medical profession practicing the defendant's specialty knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the minor plaintiff and his mother.

4. On or about 3/11/14 - 3/12/14, the defendant, United States of America, by its agents, servants, or employees, knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the minor plaintiff and his mother.

5. On or about 3/11/14 - 3/12/14, the defendant, United States of America, by its agents, servants, or employees, did not inform the minor plaintiff's parents of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the minor plaintiff and his mother.

6. If the defendant, United States of America, by its agents, servants, or employees, had informed the minor plaintiff's parents of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the minor plaintiff and his mother, neither the minor plaintiff's parents nor a reasonable person in their position would have elected the defendant's choice of treatment.

7. The alternatives to and the risks and potential consequences of the defendant's choice of treatment were material to a decision by the minor plaintiff's parents and a reasonable person in their position as to whether to undergo the defendant's choice of treatment.

8. As a direct and proximate result of the defendant, United States of America, by its agents', servants', or employees' failure to inform the minor plaintiff's parents of the alternatives to and risks and potential consequences of the defendant's treatment, the minor plaintiff, Yadiel Isabel Pena, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for his medical, surgical, and hospital care and treatment;

has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and his ability to enjoy life has been permanently adversely affected.

WHEREFORE, the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, prays judgment against the defendant, United States of America, in an amount which is just and appropriate to compensate him for his injuries, together with interest and costs.

## Count XLVI.

1. The plaintiff, Yacaira Pena, is the mother of Yadiel Isabel Pena, and the person responsible for his support and medical care and a resident of Waltham, Middlesex County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts and the allegations set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, the United States of America, is a public employer within the meaning of 28 U.S.C. §1346(b) and 2671 et seq. and at all times herein Jennifer Bentwood, M.D. and Catherine Mygatt, M.D. were employees of Greater Lawrence Family Health Center which the Department of Health and Human Services has deemed eligible for protection under the Federal Tort Claims Act pursuant to 42 U.S.C. §233.

4. The plaintiff, Yacaira Pena, repeats and reavers fully herein the allegations contained in the aforementioned Counts pleaded by the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, against the defendant, United States of America, by its agents, servants, or employees, in this complaint as if each were set forth here in its entirety.

5. As a direct and proximate result of the defendant, United States of America, by its agents', servants', or employees' negligence, breach of warranties and failure to obtain informed consent, the plaintiff, Yacaira Pena, has incurred and will continue to incur great expense for the medical, surgical, and hospital care and treatment of Yadiel Isabel Pena, throughout the life of Yadiel Isabel Pena.

WHEREFORE, the plaintiff, Yacaira Pena, prays judgment against the defendant, United States of America, in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XLVII.

1. The plaintiff, Yacaira Pena, is the mother of Yadiel Isabel Pena, and a resident of Waltham, Middlesex County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts and the allegations set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, the United States of America, is a public employer within the meaning of 28 U.S.C. §1346(b) and 2671 et seq. and at all times herein Jennifre Bentwood, M.D. and

Catherine Mygatt, M.D. were employees of Greater Lawrence Family Health Center which the Department of Health and Human Services has deemed eligible for protection under the Federal Tort Claims Act pursuant to 42 U.S.C. §233.

4. The plaintiff, Yacaira Pena, repeats and reavers fully herein the allegations contained in the aforementioned Counts pleaded by the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, against the defendant, United States of America, by its agents, servants, or employees, in this complaint as if each were set forth here in its entirety.

5. As a direct and proximate result of the defendant, United States of America, by its agents', servants', or employees' negligence, breach of warranties and failure to obtain informed consent, the plaintiff, Yacaira Pena, has suffered and will continue to suffer severe emotional distress resulting in substantial physical injury.

WHEREFORE, the plaintiff, Yacaira Pena, prays judgment against the defendant, United States of America, in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XLVIII.

1. The plaintiff, Yacaira Pena, is the mother of Yadiel Isabel Pena, and a resident of Waltham, Middlesex County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts and the allegations set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, the United States of America, is a public employer within the meaning of 28 U.S.C. §1346(b) and 2671 et seq. and at all times herein Jennifre Bentwood, M.D. and Catherine Mygatt, M.D. were employees of Greater Lawrence Family Health Center which the Department of Health and Human Services has deemed eligible for protection under the Federal Tort Claims Act pursuant to 42 U.S.C. §233.

4. The plaintiff, Yacaira Pena, repeats and reavers fully herein the allegations contained in the aforementioned Counts pleaded by the minor plaintiff, Yadiel Isabel Pena, through his Mother and next friend, Yacaira Pena, against the defendant, United States of America, by its agents, servants, or employees, in this complaint as if each were set forth here in its entirety.

5. As the direct and proximate result of the negligence, breach of warranties, and failure to obtain informed consent of the defendant, United States of America, by its agents, servants, or employees, the plaintiff, Yacaira Pena, has had severely restricted the benefit of the full services, society, and affection of Yadiel Isabel Pena.

WHEREFORE, the plaintiff, Yacaira Pena, prays judgment against the defendant, United States of America, in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

PLAINTIFFS CLAIM TRIAL BY JURY AS TO ALL ISSUES SO TRIABLE.

Respectfully submitted,
The plaintiffs,
By their attorneys,

*/s/ Andrew C. Meyer, Jr.*
*/s/ Adam R. Satin*
_____
ANDREW C. MEYER, JR., BBO# 344300
ADAM R. SATIN, BBO# 633069
LYNN I. HU, BBO# 690823
LUBIN & MEYER, P.C.
100 City Hall Plaza
Boston, MA 02108
(617) 720-4447