```
               UNITED STATES DISTRICT COURT

                 DISTRICT OF MASSACHUSETTS

                              No. 1:20-cv-12304-WGY


   YADIEL ISABEL PENA, et al,
          Plaintiffs

   vs.


   JENNIFER BRENTWOOD, M.D., et al
          Defendants


                       *********


                For Zoom Hearing Before:
                 Judge William G. Young


                    Motion to Dismiss


                  United States District Court
                  District of Massachusetts (Boston)
                  One Courthouse Way
                  Boston, Massachusetts 02210
                  Wednesday, June 30, 2021


                        *******



            REPORTER: RICHARD H. ROMANOW, RPR
                   Official Court Reporter
                United States District Court
        One Courthouse Way, Room 5510, Boston, MA 02210
                   bulldog@richromanow.com
```

```
 1                A P P E A R A N C E S

 2


 3   ADAM R. SATIN, ESQ.
     LIN HU, ESQ.
 4      Lubin & Meyer
        100 City Hall Plaza
 5      Boston, MA 02108-2106
        (617) 720-4447
 6      Email: Asatin@lubinandmeyer.com
        For Plaintiffs
 7


 8   EVE A. PIEMONTE, ESQ.
        U.S. Attorney's Office
 9      1 Courthouse Way, Suite 9200
        Boston, MA 02210
10      (617) 748-3969
        Email: Eve.piemonte@usdoj.gov
11      For Defendants

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              P R O C E E D I N G S
 2              (Begins, 2:15 p.m.)
 3              THE CLERK:  Now hearing Civil Matter 20-12304,
 4      Pena, et al vs. Brentwood, M.D., et al.
 5              THE COURT:  And good afternoon.  This is a motion
 6      that we're hearing on our zoom platform.  Our host for
 7      this hearing is Courtroom Deputy Clerk, Jennifer Gaudet.
 8      The proceedings are being taken down by our Official
 9      Court Reporter, Rich Romanow.  As they are an official
10      hearing of the court, they are open to the public,
11      members of the public are welcome.
12              I should tell any member of the public who may be
13      present that you must keep your microphone muted and
14      that the rules of court remain in full force and effect,
15      that is there is no taping, streaming, rebroadcast, or
16      other transcription or transmission of these
17      proceedings.
18              With that said, would counsel introduce themselves
19      starting with the plaintiff.
20              MR. SATIN:  Good afternoon, your Honor, Adam Satin
21      for the plaintiff.
22              THE COURT:  Good afternoon.
23              MS. HU:  Good afternoon, your Honor, Lin Hu, also
24      on behalf of the plaintiffs.
25              THE COURT:  And good afternoon to you.
```

```
 1          MS. PIEMONTE:  Good afternoon, your Honor, Eve
 2   Piemonte on behalf of the United States.
 3          THE COURT:  Yes, and good afternoon to you,
 4   Ms. Piemonte.
 5          Well this is your motion.  I've read the papers
 6   carefully and I think I'm ready for argument.  But to
 7   sharpen it, Ms. Piemonte, it seems to me that it's
 8   fairly straightforward, they survive, it would seem to
 9   me, under the discovery rule.  Yes, they're out of time,
10   out of time by quite a bit, but they did not -- the
11   cause of action accrues when they knew or should have
12   known that they had a cause of action, and on this
13   record I don't see what would alert them to the fact
14   that they had some cause of action for malpractice.
15          MS. PIEMONTE:  Well, um, thank you, your Honor,
16   and I rest on the papers and then just focus my argument
17   on the Court's question.
18          THE COURT:  Yes.
19          MS. PIEMONTE:  Which, your Honor, there was no --
20   as plaintiffs themselves allege, they knew at the time
21   of birth that there was something wrong, um, the baby
22   was born limp and had to be -- the baby had to be
23   resuscitated, he had to be resuscitated, and then he
24   spent I believe the first 23 days of his life in a
25   hospital where he was diagnosed with this brain injury,
```

1   and at that point, your Honor, the claim is accruing.
2          Now "they," meaning plaintiffs, discussed a number
3   of cases that say, "Well the plaintiff accrued more than
4   6 years later, um, when they met with their attorney and
5   were told that they may have malpractice."  But
6   equitable tolling, your Honor, requires --
7          THE COURT:  No, it's -- I -- I -- I don't think
8   it's equitable tolling, I don't think that at all.  I'm
9   saying that they hadn't discovered it.
10         Now, um, unfortunate medical outcomes don't result
11  in lawsuits, at least automatically, the standard isn't
12  that an unfortunate medical outcome means that you're on
13  notice that you've got to sue someone.  The record is
14  what it is, that's true, and here this was not a normal
15  birth or what we would hope would be a normal birth, no.
16  But that doesn't mean -- as even if the case goes
17  forward, of course it doesn't mean that anyone committed
18  malpractice.
19         But what was it that would put them on notice that
20  the condition of the child, um, was the result of some,
21  um, negligent failure of duty on the part of the
22  physicians or attendants?
23         MS. PIEMONTE:  The inquiry -- and I understand
24  what the Court is asking, but I think the inquiry is not
25  that they knew something -- not that they knew there was

1  malpractice, but that with reasonable diligence at the
2  time, um -- but that the facts at the time, um, would
3  make a reasonable person investigate and do dilligence
4  to see if there was a claim.
5      All of the cased cited, um, actually in both of
6  the parties's briefs, is that sometimes an unfortunate
7  medical consequence is a woman dies in child birth, but
8  that doesn't mean that there's malpractice.  And in then
9  those cases cited by both parties, the injury accrued at
10 the time of the death of the person or -- and that's the
11 *Gonzalez* case, um, but then equitable tolling applied
12 and that's why they were able to bring this claim long
13 after the due date.
14     So I suggest to the Court that when you have, um,
15 a birth as difficult as this birth was, that a
16 reasonable person is put on notice that there may be
17 malpractice that could have caused the reason for this
18 child's injuries and that plaintiffs were under a duty
19 to exercise reasonable dilligence and to investigate at
20 that time.
21     THE COURT:  All right.  Thank you.
22     MS. PIEMONTE:  And that the failure to do that
23 makes the claim time-barred.
24     THE COURT:  Thank you.  I do understand the
25 argument, but on the record in this case against a

```
 1    motion to dismiss where I must take all intendments in
 2    favor of the plaintiffs, I do so.  The motion to dismiss
 3    is denied.  Let's see if we can save time and money by
 4    doing a case management scheduling conference for you.
 5            This is a jury-waived case and, um, when do you
 6    think -- and we'll turn to the plaintiff here.  When
 7    will you be ready for the trial in this case?
 8            MR. SATIN:  So, your Honor, we have some
 9    considerable discovery to do, um, we also have some --
10            THE COURT:  I didn't say you didn't.  But when
11    will you be ready?
12            MR. SATIN:  I suppose we could work backwards and
13    we'll manage to get the discovery done when we do.  I
14    know that because of the backlog due to Covid-19, um,
15    you know our trial schedule is such that we're looking
16    at cases between a year to two years out.
17            THE COURT:  I'm looking at no more than a year,
18    June of next year.  Now do you want to do it faster than
19    that or not?
20            MR. SATIN:  Um, I think we'd probably need the
21    year.
22            THE COURT:  All right, you've got it.  The case is
23    on a running trial list for June, 2022.  Dispositive
24    motions must be filed by the 1st of March, 2022.  You
25    have two weeks from today's date to file a joint
```

1    proposed case management schedule that sets out the
2    interim dates as you may agree.  But if you don't agree,
3    set forth your separate positions, I will choose one or
4    the other, which is most reasonable under the
5    circumstance.  I'm not going to micromanage it.
6         Should the case settle at any stage along the way,
7    a simple phone call to Ms. Gaudet is all that's
8    necessary and you'll find me sweet reason as to what
9    needs to be put on the record, if anything.  But don't
10   ever make the call and then tell me the settlement's
11   become unwound.
12        So with that taken care of, I think we're ready to
13   recess.
14        Are there any questions?
15        MR. SATIN:  No, thank you.
16        THE COURT:  All right, I hear none.
17        It's good to see you.  I look forward to working
18   with you.  And we will recess.  We'll recess.
19        (Ends, 2:50 p.m.)

```
 1                    C E R T I F I C A T E

 2

 3

 4

 5         I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

 6    do hereby certify that the foregoing record is a true

 7    and accurate transcription of my stenographic notes

 8    before Judge William G. Young, on Wednesday, June 30,

 9    2021, to the best of my skill and ability.

10

11

12

13    /s/ Richard H. Romanow 07-12-21
      _____
14    RICHARD H. ROMANOW    Date
```